Ray Gene SMITH and Mark Schumacher, Petitioners,

v.

Jack BROCK, District Judge, Comanche County, Oklahoma, Respondent.

No. 47867.

Supreme Court of Oklahoma.

Feb. 18, 1975.

Rehearing Denied March 18, 1975.

Bill Sexton, Lawton, for petitioners.

Githen K. Rhoads, Rhoads & Johnson, Inc., Nicholas D. Garrett, Godlove, Joyner, Godlove, Garrett, Meyers & Davis, Inc., Lawton, for respondent.

Paul M. Vassar, Gen. Counsel, Oklahoma Bar Association, Oklahoma City, brief amicus curiae.

SIMMS, Justice.

Petitioner, Ray Gene Smith, a practicing member of the Texas Bar Association, and Petitioner Schumacher, who is informed against in the District Court of Comanche County, Oklahoma, for the crime of Possession of Marijuana with Intent to Distribute, jointly request this Court to assume original jurisdiction and issue a writ óf mandamus compelling Respondent Comanche County District Judge to admit Petitioner Smith, pro hac vice (for this one occasion) to defend Schumacher in the criminal proceedings.

Schumacher is a member of the Armed Services stationed at Ft. Sill, Oklahoma, however, the place of his legal residence is not made clear in the transcript, except that he is a resident of either Oklahoma,

Minnesota, or Wisconsin. Following the arrest of Schumacher, on the above mentioned charge, a member of his family called the office of lawyer S., a member of the Oklahoma Bar Association who offices in Lawton, the county seat of Comanche County.

The record does not disclose with specificity whether lawyer S. then contacted Smith to assist in Schumacher's defense or whether Schumacher's relatives called Smith directly to retain Smith as Schumacher's lawyer. However, it is uncontradicted that both Oklahoma lawyer S. and Petitioner Smith were tendered and received retainer fees prior to the date of Schumacher's preliminary hearing.

When Schumacher's preliminary hearing was to be conducted before a Special District Judge of Comanche County, Smith tendered his application for admission pro hac vice. The Special District Judge then apparently conferred with an unidentified District Judge. After this purported conference, the Special District Judge continued the preliminary hearing as well as Smith's application to be admitted for the one case.

Smith's application was later presented to Respondent Judge and after an evidentiary hearing, the application to appear, pro hac vice, was denied. It is from this ruling Petitioners' seek relief by original proceedings in this Court.

The transcript of the evidentiary hearing and the unrefuted exhibits filed in the original proceedings before this Court show, inter alia, that Smith has appeared pro hac vice in thirteen separate criminal cases in Comanche County, commencing in May, 1973; has appeared in nine separate criminal cases during the calendar year 1974; that Petitioner Smith, on July 19, 1974, was adjudged to be in direct criminal contempt of the District Court of Comanche County by reason of Smith's alleged unprofessional conduct in the trial of a criminal case, in that Smith continued to repeat questions to which the court had previously sustained objections.

It is to be emphasized that Schumacher did not testify in support of Smith's application for admission pro hac vice, nor has Schumacher filed any affidavit or verified pleadings in the cause pending before this Court.

The July 19, 1974, judgment and sentence for Contempt and punishment of $500.00 fine, above mentioned, are presently on appeal to the Court of Criminal Appeals of Oklahoma.

Petitioner Smith, at the evidentiary hearing for admission pro hac vice conducted before Respondent Judge, testified that on a previous occasion, he had represented to and promised Respondent Judge that Petitioner would not represent any defendant in a criminal case whom he had not previously represented or who were not residents of Texas. The transcript of the evidentiary hearing reflects that Petitioner Smith, in answer to a question by Respondent Judge, testified that Respondent Judge either misunderstood or that Petitioner Smith was no longer going to be bound by that agreement.

Additionally, unrefuted exhibits disclose that Smith, on the 23rd day of March, 1971, was adjudicated in Contempt of Court in the 89th District Court of Wichita County, Texas, the Honorable Temple Driver, Presiding, and sentenced to a period of three days in the Wichita County Jail and ordered to pay a fine of $100.00. This contempt conviction was had by reason of Smiths' "obstruction of justice in the trial as a result of the loud noises and disruptions he created at the door of the courtroom." Prior to the expiration of the three day sentence of imprisonment, Judge Driver ordered Smith released. There is no showing before us that the March 23rd adjudication of contempt was ever vacated, appealed, or that the same is other than final.

Thereafter, on March 31, 1971, Ray Gene Smith was again held in Contempt of Court by Judge Driver and sentenced to three days confinement and a fine of $100.00 for the following actions which are

quoted from the ORDER OF CONTEMPT signed by Judge Driver:

"One of the reasons behind this decision was my fear of the possible effects upon the jury panel of this disturbance which occurred just outside of the open door of the courtroom, and especially the possibility that the defendant could not obtain a fair trial as a result."

"Since attorney Ray Gene Smith initiated the attack upon District Attorney Jim Phagan and without any warning struck him in the jaw with his fist, I am holding Ray Gene Smith responsible for the dic⸳ᵖtion of the trial. Therefore, he should be held in contempt of court."

The March 31, 1971, judgment of contempt was attacked by habeas corpus in the Texas Court of Criminal Appeals, Case No. 44,119, and on May 5, 1971, the Texas Appellate Court promulgated an opinion finding no reversible error in the contempt proceedings and denied habeas corpus.

Petitioners advance two propositions in support of their application to assume original jurisdiction and prayer for mandamus. We shall treat the propositions in the order they are presented.

I. PETITIONER SMITH HAD A RIGHT TO APPEAR PRO HAC VICE UNDER THE RECIPROCAL PROVISIONS OF THE OKLAHOMA STATUTES GOVERNING ADMISSION OF OUT OF STATE ATTORNEYS.

Title 5, O.S.1971, §§ 17; 17.1; 17.2 provide, inter alia, that a lawyer who is not admitted to practice in Oklahoma, but who is a regularly admitted practicing attorney in a foreign state, may be admitted, pro hac vice, to practice in an Oklahoma judicial or quasi-judicial tribunal, upon filing written application, taking oath, and associating himself with Oklahoma counsel. 5 O.S.1971, § 17 et seq., however, are not exclusively controlling.

█ The inherent power of the Supreme Court of Oklahoma to control the practice of law is found in the case of In re: Integration of the State Bar of Oklahoma, 185 Okl. 302, 95 P.2d 113 (1939) in syllabus by the Court:

"1. The Supreme Court is entrusted with the power and duty to determine the qualifications for admission to the bar, and also has the power and duty to determine when those qualifications are wanting, and when the privilege of practicing law has been forfeited.

"2. The practice of law and the determination of when the right to practice has ceased are so intimately connected and bound up with the exercise of judicial power in the administration of justice that the right to define and regulate is inherent to the judicial department and belongs to the Supreme Court.

"3. The term inherent power of the judiciary means that power which is essential to the existence, dignity and functions of the judiciary.

"4. This court having the inherent power to determine the qualifications for admission to the bar, and the power and duty to determine when the privilege of practicing law has been forfeited, has, in the exercise of sound judicial discretion, the power to promulgate rules to create, control, regulate and integrate the Bar of the State of Oklahoma."

Also see: Ford v. Board of Tax Roll Collections, Okl., 431 P.2d 423 (1967).

Under the authority of Article IV, § 1, Okla.Const. (1907) and Article VII, §§ 1 and 4, Okla.Const. (1967), and by reason of In re: Integration of the State Bar, supra, the Supreme Court of Oklahoma has created an association of members of the Bar of the State of Oklahoma and promulgated rules governing the practice of law in this State.

█ These rules are found in Title 5, O.S.1971, Ch. 1, App. 1. Section 5 of Art. 2 thereof, provides:

"SECTION 5. ATTORNEYS FROM OTHER JURISDICTIONS.

An attorney duly admitted and presently qualified to practice in the Courts of rec-

ord of another State or territory or of a foreign country may be permitted to practice before any court, or before any board, department, commission or other administrative tribunal or agency of this state, solely for the purpose of conducting an action or a proceeding in which he has been employed which is pending in such court, tribunal, or agency, upon the following express conditions:

. . . . . .

"(d) If it appears that the foreign attorney has wilfully engaged in disorderly or disruptive tactics of such character as to interfere with the proper and efficient conduct of proceedings and the due administration of justice in any court or tribunal in which he has practiced, admission may be refused."

Section 5, sub-paragraph (d), above quoted, is consistent with controlling case law in other jurisdictions.

Florida has a reciprocity rule, much like that of Oklahoma's, for permitting an out of state lawyer to appear in the Florida courts. It was held in Parker v. Parker (Fla.App.1957) 97 So.2d 136, 137:

"The right of an attorney of another state to practice is permissive and subject to the sound discretion of the court to which he applies for the permission."

A contention analogous to that of petitioner's numbered I was considered by the Supreme Court of New Jersey which held in State v. Kavanaugh (1968) 52 N.J. 7, 243 A.2d 225:

"Mister Baileys' client's urge a constitutional right to select an attorney who is not a member of our Bar. So long as the Bar of our State is able, willing and free to provide effective counsel, there is no such right."

Kavanaugh, supra, was predicated upon Thomas v. Cassidy (4th Cir., 1957) 249 F. 2d 91; cert. denied, Fitzgerald v. Cassidy, 355 U.S. 958, 78 S.Ct. 544, 2 L.Ed.2d 533 (1953) in which the following language is found:

"It is well settled that permission to a nonresident attorney, who has not been admitted to practice in a court, to appear pro hac vice in a case there pending is not a right but a privilege, the granting of which is a matter of grace resting in the sound discretion of the presiding judge. 5 Am.Jur. p. 572; Manning v. Roanoke & T. R. Co., 122 N.C. 824, 28 S.E. 963; Youmans v. Hanna, 35 N.D. 479, 160 N.W. 705, 161 N.W. 797, Ann. Cas. 1917E, 263; Note 24 L.R.A.,N.S., 754."

More recently, it was held in State v. Ross, 36 Ohio App. 185, 304 N.E.2d 396, 399:

"It has, however, been generally recognized that an attorney not admitted to practice in Ohio, but in good standing in another state, may be specially admitted for the purpose of representing a person in a particular case, be it civil or criminal. Whether or not so to specially permit an attorney not admitted to practice in Ohio, but admitted to practice and in good standing in another state, to represent a party in a particular action, is a matter lying within the sound discretion of the trial court."

■ Concluding that admission of an out of state lawyer, pro hac vice, under the Rules Governing the Practice of Law in Oklahoma above cited, and the cases herein referred to, rests within sound judicial discretion, we next query the bounds of judicial discretion regarding such a matter.

We are highly persuaded by Standard 3.-5 and the commentary thereto at pages 45 and 46 of the Standards Relating to the Functions of the Trial Judge, Standards for Criminal Justice, Institute of Judicial Administration, American Bar Association, Approved Draft, 1972.

"ATTORNEYS FROM OTHER JURISDICTIONS.

If an attorney who is not admitted to practice in the jurisdiction of the Court petitions for permission to represent a defendant, the trial judge may

(a) Deny such permission if the attorney has been held in contempt of Court, or

otherwise formally disciplined for court-room misconduct, *or if it appears by reliable evidence that he has engaged in courtroom misconduct sufficient to warrant disciplinary action;*

COMMENTARY:

"Great deference should be given to the request of a defendant to be represented by counsel of his choice. Yet there is no absolute right to be represented by counsel who is not admitted to practice in the jurisdiction of the court. Sub-para. (a) sets forth some grounds (by no means exclusive) upon which a judge might justifiably decline to permit counsel to be specially admitted; * * * With the objective of minimizing the risk that a trial be aborted by misconduct of counsel, no rigid rules are appropriate, however, and each application should be considered on its own circumstances. * * *"

If the judicial system of this country and state is to function in the orderly manner contemplated by the Constitution of the United States and the Oklahoma Constitution, a trial court must retain the inherent power to protect the integrity of legal proceedings about to commence before it against potentially disruptive, or disorderly influences.

 If, after evidentiary hearing, a trial judge, in the exercise of sound judicial discretion, finds that the admission of an out of state attorney pro hac vice, is fraught with potential abusive misconduct or patent misrepresentations on the part of foreign counsel seeking to be admitted, the application for admission pro hac vice, should be refused.

We therefore conclude Petitioner's first contention to be without merit.

## II. THE RIGHT OF AN ACCUSED TO OUT OF STATE COUNSEL OF HIS OWN CHOICE.

Petitioner Schumacher contends his Sixth and Fourteenth Amendment rights under the Federal Constitution are being violated by Respondent Judge in that to deny the application of Smith to appear pro hac vice effectively denied Schumacher's right to counsel of his own choosing.

Petitioner relies principally upon United States v. Bergamo et al. (3rd Cir. 1946) 154 F.2d 31, wherein it was held:

"The Sixth Amendment provides inter alia that 'In all criminal prosecutions, the accused shall enjoy the right * * * to have the Assistance of Counsel for his defence.' The Supreme Court has held that the right to the assistance of counsel includes the right to counsel of the defendant's choosing. In Glasser v. United States, 315 U.S. 60, 70, 62 S.Ct. 457, 464, 86 L.Ed. 680, Mr. Justice Murphy citing Powell v. Alabama, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158, 84 A.L.R. 527, stated that '* * * the right to the assistance of counsel is so fundamental that the denial by a state court of a reasonable time to allow the selection of counsel of one's own choosing, and the failure of that court to make an effective appointment of counsel, may so offend our concept of the basic requirements of a fair hearing as to amount to a denial of due process of law contrary to the Fourteenth Amendment * * *.' [cases cited] 'Under both our Federal and State Constitutions, a defendant has the right to defend in person or by counsel of his own choosing,' citing inter alia the Sixth Amendment."

Petitioners also rely upon Jackson v. State, Okl.Cr., 316 P.2d 213 (1957), syllabus by the Court:

"4. If defendant is able to employ counsel, the choice is a personal right of which he cannot be deprived by arbitrary action which is secured to him by express constitutional and statutory provisions, the denial of which is fundamental error."

While both *Bergamo, supra,* and *Jackson, supra,* are accepted as proper, correct statements of fundamental constitutional law, neither case deals with the denial of admission of an out of state lawyer to ap-

pear pro hac vice, upon a showing of legal cause, where local counsel has been retained in the case.

In holding that an accused person could not claim representation by out of state lawyers as a constitutional right, but once admission pro hac vice was granted, the same could not, without cause, be taken away. The United States Court of Appeals in Cooper et al. v. Hutchinson (3rd Cir. 1950) 184 F.2d 119, made the following pertinent observation:

"The narrower question here is the extent to which an accused persons choice of counsel is a constitutional right. The argument insists that there is a constitutional right, at least in a capital case, to whatever counsel an accused person pleases to have. *If that counsel is not a member of the bar of the state where the prosecution is being conducted, still, the argument runs, the accused may effectively choose him just as freely as he could choose a lawyer admitted to practice locally.* The person chosen by the accused may then insist upon conducting the defense in the local courts. *Control by the states over the persons who may be licensed to practice law in their courts would thus be greatly diminished in every capital criminal prosecution where the accused desires counsel from somewhere else.*

"*The length to which this argument takes one is startling. It has always been thought that the license to practice law is limited, except as a matter of grace, to persons who had fulfilled the local requirements for practice.* * * *" [E. A.]

The case at bar indicates no discharge of counsel pro hac vice following the commencement of the proceedings, as was the case in *Cooper, supra.*

Again, citing the Ohio case of State v. Ross, *supra:*

"There is nothing provincial about the requirement for admission to practice in the courts of a State. The courts of every jurisdiction must have control of practice before them as an 'incident to the broader responsibility for keeping the administration of justice and the standards of professional conduct unsullied.' Cohen v. Hurley, 366 U.S. 117, 123–124, 81 S.Ct. 954, 958, 6 L.Ed.2d 156, 162 (1961)."

In State v. Ross, *supra,* the refusal by a trial judge to permit an out of state attorney to appear pro hac vice because that attorney had, prior to the order of refusal, violated Canon 7 of the Code of Professional Responsibility, was sustained by the Supreme Court of the State of Ohio.

We therefore conclude that Petitioner Schumachers' Sixth and Fourteenth Amendment right to be represented by counsel of his own choosing does not extend to an out of state attorney who has either failed to comply with the Rules Creating and Controlling the Oklahoma Bar Association; or, whose previous conduct is in contravention of those Rules. Concluding, further, that Respondent Judge did not abuse sound judicial discretion denying Petitioner Smiths' Application to Appear Pro Hac Vice, and that there is no infringement upon Petitioner Schumachers' Sixth and Fourteenth Amendment Rights to Counsel, we deny the Application for Writ of Mandamus.

Original jurisdiction assumed. Petition for writ of mandamus denied.

All the Justices concur.