2000 OK 32

**Fred E. NORTON, D.D.S.,
Plaintiff–Appellant**

v.

**Carl HUGHES, Leo Winters, II, and
Hughes & Grant, Defendants–
Appellees**

No. 92,357.

Supreme Court of Oklahoma.

April 18, 2000.

Kyle Wayne Goodwin, Hughes, Artus & Goodwin, Oklahoma City, Oklahoma, For Defendants/Appellees Carl Hughes and Hughes & Grant.

Robert Jackson, Jackson, Hall & Associates, Oklahoma City, Oklahoma, For Defendant/Appellee Leo Winters, II.

Jon W. McLanahan, Oklahoma City, Oklahoma, For Plaintiff/Appellant Fred E. Norton, D.D.S.

WINCHESTER, J.

¶ 1 This matter concerns the legal malpractice action brought by plaintiff/appellant Fred E. Norton, D.D.S., (Norton) against defendants/appellees Carl Hughes, Leo Winters, II, and Hughes & Grant (attorneys) and defendants Joe E. White, Jr., Allan Mitchell, and Kyle Goodwin. This litigation had its roots in an action filed by attorneys on behalf of Norton against third parties, to recover damages for fraud, breach of contract, breach of warranties, and violations of the Texas Deceptive Trade Practices–Consumer Protection Act (DTPA) codified at V.T.C.A., Bus. & C. § 17.41 *et. seq.* Norton voluntarily dismissed defendants Joe E. White, Allan Mitchell, and Kyle Goodwin and proceeded against defendants/appellees before the trial court.

## FACTS AND PROCEDURAL HISTORY

¶ 2 Norton hired attorneys to file an action against the operator of an exotic animal ranch in Texas, Charles Kuhn (Kuhn), arising out of the purchase of three pairs of emus in November 1992, for the approximate purchase price of $82,500.00. Pursuant to the contract, Kuhn agreed to deliver certain emus proven to be compatible, successful breeding pairs to Norton. The emus were identified by micro chips embedded in their bodies. After a disappointing breeding season, Norton verified through his veterinarian that the emus Kuhn delivered to him may have been different from the ones Kuhn agreed to sell him.

¶ 3 In the spring of 1994, Norton contacted attorneys, specifically Leo Winters, II, to file a lawsuit against Kuhn. Norton signed a generic, standard employment contract on May 19, 1994, wherein Carl Hughes and Leo Winters, II, of the law firm Hughes, White, Adams & Grant, agreed to represent him in a lawsuit arising out of the purchase of the three emu breeding pairs. In May 1994, Hughes and Winters in fact filed a lawsuit against Kuhn in the United States District Court of the Western District of Oklahoma, Case No. CIV–94–812. By written correspondence dated June 2, 1994, Mr. Winters notified Norton that Kuhn might contest *in personam* jurisdiction or service of process in his responsive pleading. The original complaint subsequently was amended on December 16, 1994, to include additional parties, to-wit: Alton Goodrich, deceased (Kuhn's partner in the exotic animal ranch who died in October 1993), the Estate of Alton C. Goodrich and the Goodrich Living Trust a/k/a Alton C. Goodrich Living Trust. The amended complaint alleged causes of action for fraud, breach of contract, breach of warranties and violations of the DTPA. The federal trial court dismissed the action for lack of *in personam* jurisdiction over the Texas defendants in June 1995.

¶ 4 After the dismissal, Norton apparently decided to pursue his claims against the Texas defendants in the state of Texas. Attor-

neys advised Norton they could not file an action in Texas, because they were not licensed to practice law in that state. Attorneys contacted numerous Texas attorneys, all of whom declined to represent Norton. In December 1995, Mr. Allan Mitchell of Hughes & Grant contacted a Dallas attorney, Robert R. Roby, regarding Norton's lawsuit. Norton traveled to Dallas, Texas, to meet with Mr. Roby on February 8, 1996. On May 9, 1996, by written correspondence to Norton, Mr. Roby declined to pursue Norton's claims against Kuhn. Written correspondence of September 20, 1996, and October 11, 1996, confirms additional attempts by the law firm of Hughes & Grant to locate a Texas attorney willing to file the lawsuit for Norton.

¶ 5 In May 1997, Norton filed an action in Oklahoma County District Court against attorneys wherein he alleged professional negligence. Norton contended attorneys breached their duty to provide the minimum standard of care in their legal representation. He alleged attorneys filed his lawsuit in the wrong venue and allowed the applicable statute of limitations to expire. In short, Norton contended attorneys' failure to file his lawsuit in Texas against Kuhn and the other Texas defendants constituted legal malpractice. Defendants/appellants Hughes, Hughes & Grant and Winters all moved for summary judgment. The trial court sustained their motions for summary judgment, finding attorneys had no duty to file a lawsuit in a foreign jurisdiction in which they were not licensed to practice law.

¶ 6 In an unpublished opinion, the Court of Civil Appeals, Division I, reversed the trial court's grant of summary judgment and remanded the cause, finding disputed issues of material facts. Upon *de novo* review, we find summary judgment for attorneys was indeed appropriate, and additionally hold an Oklahoma attorney has no duty to file a lawsuit in a foreign jurisdiction in which the attorney is not licensed to practice law. The other issues before the trial court on attorneys' motion for summary judgment, addressed by the appellate court pursuant to Norton's appeal, are not raised in the petition for certiorari and therefore are not dealt with herein. *See* Rule 1.180(b), Supreme Court Rules.

## REVIEW OF SUMMARY PROCEEDINGS

¶ 7 Summary judgment is appropriate where it appears there is no substantial controversy as to any material fact and one party is entitled to judgment as a matter of law. *Daugherty v. Farmers Coop. Ass'n,* 1984 OK 72, ¶ 5, 689 P.2d 947, 949; *Crockett v. McKenzie,* 1994 OK 3, ¶ 3, 867 P.2d 463, 464. "[T]he inquiry on appeal concerning the propriety of the entry of summary judgment is limited to potential controversies concerning any issue raised by the pleadings." *Wabaunsee v. Harris,* 1980 OK 52, ¶ 9, 610 P.2d 782, 785. Our ruling must be made on the record that the parties actually presented and not on a record that is potentially possible. *Weeks v. Wedgewood Village, Inc.,* 1976 OK 72, ¶ 12, 554 P.2d 780, 784. An order that grants summary relief disposes of legal issues. Therefore, on appeal, the review we conduct is *de novo.* *Brown v. Nicholson,* 1997 OK 32, ¶ 5 n. 1, 935 P.2d 319, 321 n. 1; *Manley v. Brown,* 1999 OK 79, ¶ 22, n. 30, 989 P.2d 448, 456 n. 30. "An appellate court claims for itself plenary, independent and non-deferential authority to re-examine a trial court's legal rulings." *Manley,* 1999 OK 79, ¶ 22, n. 30, 989 P.2d at 456, n. 30.

## DUTY OF AN OKLAHOMA ATTORNEY TO FILE A CAUSE OF ACTION IN A FOREIGN JURISDICTION IN WHICH THE ATTORNEY IS NOT LICENSED TO PRACTICE LAW

¶ 8 The sole issue we address on certiorari is whether an Oklahoma attorney has a duty to file a cause of action in a foreign jurisdiction in which that attorney is not licensed to practice law. The issue is one of first impression in the state of Oklahoma, although we note that other jurisdictions have visited this issue and through recent holdings have placed it within the public's scrutiny.

¶ 9 In the instant matter, Norton bases his claim for legal malpractice on the premise

attorneys owed him a duty to file his lawsuit in Texas, and when attorneys failed to do so, they breached that duty. In addition, Norton contends attorneys allowed the statute of limitations to run on the DTPA claim, by their failure to file his lawsuit in Texas. We note that Norton's malpractice claim against attorneys is status based, as opposed to contractual.

¶ 10 The elements of a legal malpractice claim are well established in the state of Oklahoma.

"The plaintiff in a legal negligence action must prove (1) the existence of an attorney-client relationship; (2) breach of a lawyer's duty to the client, (3) facts constituting the alleged negligence, (4) a causal nexus between the lawyer's negligence and the resulting injury (or damage) and (5) but for the lawyer's conduct, the client would have succeeded in the action." *Manley v. Brown,* 1999 OK 79, ¶ 8, 989 P.2d 448, 452.

██ ¶ 11 The sovereign state of Texas has not conferred upon Oklahoma attorneys the right to practice law within its borders. In its use in jurisprudence, duty may be recognized as the correlative of *right*. In the instant case, since no right exists, no corresponding duty may be imposed. In the absence of a duty, no claim can be made.

"Prosser, Torts (3 ed.) § 53, states that a duty in negligence cases may be defined as an 'obligation, to which the law will give recognition and effect, to conform to a particular standard of conduct toward another.' Actionable negligence is a failure to discharge a legal duty to the one injured. Lacking duty, there can be no negligence." *Rasmussen v. Prudential Ins. Co.,* 277 Minn. 266, 268–269, 152 N.W.2d 359, 362 (1967).

¶ 12 Attorneys' duty, in this case, was to see that the ascertainable rights of Norton were protected as fully as possible under the prevailing circumstances within the bounds of common sense and proper professional practices. *Birchfield v. Harrod,* 1982 OK CIV APP 2, ¶ 32, 640 P.2d 1003, 1009. When attorneys filed the complaint and amended complaint in federal court, Case No. CIV–94–812, they fulfilled their duty to Norton. Nor-

ton does not contest the fact attorneys filed a lawsuit in the jurisdiction in which they were licensed to practice law. To file the case in the state of Texas when attorneys were not licensed by the State Bar of Texas would offend common sense and proper professional practices. Public policy interests prohibit this Court from requiring attorneys to perform an illegal act, such as the unauthorized practice of law.

██ ¶ 13 An attorney from a foreign jurisdiction who attempts to practice law in the state of Oklahoma is subject to disciplinary proceedings for the unauthorized practice of law, that partake of elements of both civil and criminal proceedings. *In re Evinger,* 1979 OK 127, ¶ 4, 604 P.2d 844, 844. The unauthorized practice of law violates the rules of professional conduct, thereby exposing the attorney to disciplinary sanctions. The Rules of Professional Conduct governing attorneys and the state bar, found in 5 O.S. Ch. 1, App. 3–A, address the unauthorized practice of law in Rule 5.5 that provides, in pertinent part:

"A lawyer shall not:

(a) practice law in a jurisdiction where doing so violates the regulation of the legal profession in that jurisdiction;"

[Adopted effective July 1, 1988.]

¶ 14 The former disciplinary rule regarding Rule 5.5(a), to-wit: DR–3–101(B) of the Code of Professional Responsibility provides that "a lawyer shall not practice law in a jurisdiction where to do so would be in violation of regulations of the profession in that jurisdiction." It is important to note that the state of Texas adopts a similar Code, along with Rule 5.5(a) and DR–3–101(B). *See* Rule 5.05 of the Texas Disciplinary Rules of Professional Conduct. In the state of Texas, an attorney may be disciplined for an act such as the unauthorized practice of law.

██ ¶ 15 The conduct permissible for attorneys in the state of Oklahoma, as well as in the state of Texas, does not include the unauthorized practice of law. That is to say, an attorney who is not licensed to practice law in the state may not do so, absent special circumstances such as pro hac vice admis-

sion—a privilege, not a right, that is subject to the sound judicial discretion of the state trial court. *Smith v. Brock,* 1975 OK 27, ¶¶ 20–21, 532 P.2d 843, 848. Therein, we held that the admission of an out-of-state lawyer pro hac vice, under the rules that govern the practice of law in Oklahoma, rests within sound judicial discretion.

¶ 16 This Court has the inherent power to control the practice of law in Oklahoma. *Smith v. Brock,* 1975 OK 27, ¶ 15, 532 P.2d 843, 847. Similarly, the state of Texas views regulation of the practice of law as a judicial function. *See Unauthorized Practice Comm. v. Cortez,* 692 S.W.2d 47, 50 (Tex. 1985), *cert. denied,* 474 U.S. 980, 106 S.Ct. 384, 88 L.Ed.2d 337 (1985), wherein the Texas Supreme Court stated, "[o]ur holding presumes we have concluded that when the activities alleged to be the practice of law are disputed, it is for the court to decide whether those activities amount to practicing law.... " *See also, Green v. Unauthorized Practice of Law Comm.,* 883 S.W.2d 293, 297 (Tex.Civ.App.—Dallas 1994, no writ).

¶ 17 The record clearly establishes that attorneys made reasonable efforts to help Norton find a Texas attorney. And indeed, the value of a local attorney cannot be underestimated—it is a public policy issue that supports the current unauthorized practice of law statutes and pro hac vice requirements in both Oklahoma and Texas. "The importance of knowledge of the local situation is fully demonstrated by the well recognized practice among the lawyers of this State in associating local counsel in the trial of most important jury cases." *Cook et ux. v. Irion et al.,* 409 S.W.2d 475, 477 (Tex.Civ.App.—San Antonio 1966). Knowledge of the local situation is, in many cases, imperative. Norton's case against Kuhn is no exception. *See* correspondence dated September 6, 1996, from attorney Jimmy L. Browning of the Breckenridge, Texas, law firm Browning & Wimberley, a law firm familiar with the local situation involving the potential Texas defendant Kuhn. In pertinent part, Mr. Browning states:

"We have carefully reviewed the materials you sent to us to determine if we could

effectively present Dr. Norton's case here in our District Court of Stephens County.

\* \* \*

4. Both my partner and I both belong to the same church as Charles Kuhn. Charles and I are very active in the church.... Charles is very well known in the community and while [sic] does not have a good business reputation, he is local, and a lot of people who will be on a jury panel come into contact with him every week just as we do. They are not likely to want to make an enemy of him for the benefit of a mindless citizen of another State.

\* \* \*

However, there are two lawyers in town who do not have strong local ties and I suggest you might try them.... "

¶ 18 Attorneys clearly advised Norton they could not file the lawsuit in Texas because they were not licensed to practice law there. *See* correspondence of September 20, 1996; correspondence of October 11, 1996; affidavit of Carl Hughes dated March 24, 1998, wherein he states that in November, 1995, he explained to Norton's daughter and wife that he and his firm could not file the lawsuit in Texas. The onerous burden on attorneys to accept employment to represent Norton and determine to file the lawsuit in the state of Oklahoma, then suddenly to be confronted with the demands of time, expenses, and civil as well as criminal liability attendant to unauthorized practice of law in the state of Texas, is not one this Court will impose.

¶ 19 The sovereign state of Texas confers no right upon an Oklahoma attorney to file a lawsuit within its borders. Therefore, we hold no corresponding duty exists for an Oklahoma attorney to file a lawsuit in the state of Texas, or in any other foreign jurisdiction where the attorney is not licensed to practice law. To hold otherwise would subject the attorney to unauthorized practice of law statutes and professional discipline. We refuse to place the members of our state bar in such an untenable position. Norton's malpractice claim clearly is status based. Norton fails to present any fact or inference from

facts that attorneys breached their duty to him. No substantial controversy as to any material fact exists, and attorneys are entitled to judgment as a matter of law.

## CERTIORARI PREVIOUSLY GRANTED; COURT OF CIVIL APPEALS OPINION VACATED; ORDER OF THE TRIAL COURT SUSTAINED.

SUMMERS, C.J., OPALA, WATT, JJ., STRUBHAR, LILE, S.JJ.—CONCUR.

HARGRAVE, V.C.J., LAVENDER, BOUDREAU, JJ.—DISSENT.

BOUDREAU, J., dissenting:

¶1 I respectfully dissent from the majority opinion. Norton hired attorneys to represent him in an action against Kuhn arising out of the purchase of 3 pairs of Emu birds. Norton and attorneys reduced their contract of employment to a writing. The first paragraph of the parties' contract consists of one sentence which identifies the parties and authorizes Counsel's "representation ... and other investigations ... as they deem necessary to properly effectuate such representation in regard to the matter of the investigation, preparation and trial of *any and all claims* against *any and all persons*, companies, and others arising out of the purchase of three (3) Emu breeding pairs from Charles Kuhn, *a citizen of Texas.*" (Emphasis added.)

### I. The Court of Civil Appeals correctly determined that the specific question of duty in this case should be resolved by reference to the contract of employment between Norton and the attorneys.

¶2 In its opinion, the Court of Civil Appeals correctly determined that the question of whether attorneys had a duty to file Norton's claims in a Texas court had to be resolved by reference to the contract of employment. In examining the contract of employment, the Court of Civil Appeals opinion concluded that the parties contract was ambiguous on this question. The opinion further found that the evidentiary materials submitted in connection with the summary judgment motion raised a mixed question of law and disputed fact that cannot be decided on summary judgment.

¶3 In reversing the Court of Civil Appeals, the majority opinion states that an Oklahoma attorney has no duty to file a lawsuit in the state of Texas or in any other foreign jurisdiction where the attorney is not licensed to practice. In determining that no such duty exists, the majority opinion makes virtually no reference to the contract of employment between Norton and the attorneys. Instead, the majority opinion simply declares, without any discussion whatsoever, that Norton's malpractice action is based on the status of his attorneys and not on the employment agreement with his attorneys.

¶4 I cannot agree. In the petition alleging his malpractice claim, Norton continually referred to the contract of employment with his lawyers and even attached it as an exhibit. It is quite clear that Norton based his malpractice claim on what he perceived as the failure of the attorneys to exercise ordinary skill and diligence *in performing the tasks which they undertook in the employment agreement.* I imagine that he will be quite surprised with the manner in which the majority opinion has transformed his malpractice claim from one where liability is based on the contract of employment to one where liability is based on the status of his attorneys.

¶5 While legal malpractice constitutes a tort, in reality, liability rests on the attorney's employment by the client. *See, Funnell v. Jones,* 1985 OK 73, 737 P.2d 105, 107. Before an attorney can be held liable, it must appear that the loss suffered by the client arose from the attorney's failure or neglect to discharge some duty which was fairly within the purview of his employment. *See, Vanguard Production, Inc. v. Martin,* 894 F.2d 375 (1990 10th Cir) (attorney owes common-law duty of ordinary care and workmanlike performance on underlying contract with client); *State ex rel OBA v. Green,* 1997 OK 39, 936 P.2d 947, 956 (attorney has obligation to provide services for which he was hired). In my opinion, the Court of Civil Appeals correctly determined that the specific ques-

tion of duty in this case should be resolved by reference to the contract of employment between Norton and the attorneys.

**II. Even within a malpractice claim that is so-called 'status based,' the issue of duty should not be resolved in such a categorical fashion.**

¶ 6 The majority opinion reasons that public policy interests prohibit this Court from imposing a duty upon an attorney to file a lawsuit in a jurisdiction where the attorney is not licensed to practice. In the view of the majority, imposing such a duty would subject the attorney to discipline for the unauthorized practice of law. Rule 5.5, Rules of Professional Conduct, 5 O.S.1991, ch. 1, app. 3–A.

¶ 7 I do not view Norton as seeking to impose a duty upon attorneys that would subject them to discipline for professional misconduct. As recognized by the majority decision, Texas (and every other state and federal court throughout the United States) has a procedure by which an attorney may seek temporary admission to practice law in a case by *pro hac vice* motion. Although admission is within the sound discretion of the court, it is rarely denied to an attorney who is licensed by and in good standing in another jurisdiction.

¶ 8 Because the majority opinion categorically refuses, upon public policy grounds, to impose a duty on an Oklahoma attorney to file a lawsuit in a state where the attorney is not licensed to practice law, a question remains as to whether those same public policy grounds prevent an attorney from contractually assuming such a duty. May an Oklahoma attorney agree to file a personal injury case on behalf of his client if he is not licensed to practice in Kansas? Based on the majority opinion, I can only conclude that he cannot without engaging in the unauthorized practice of law.

¶ 9 In today's modern technological society, the legal profession is increasingly engaged in national and even global controversies. Lawyers routinely represent clients in cases that require appearances in state or federal courts throughout the United States. Lawyers today are often unable to forecast the jurisdictions in which their clients will need representation. Frequently they are not active members of the bar in jurisdictions in which they are called to represent their clients. In my opinion, the holding in the majority opinion flies in the face of modern practice of law.

**III. Summary**

¶ 10 In summary, I cannot accept the notion that a lawyer has no duty under any circumstances to file a case in a jurisdiction where the lawyer is not licensed to practice law simply because he is not a member of the bar. The issue of duty should be resolved by reference to the attorney-client relationship as defined by the employment agreement and not by reference to the bar membership of the attorney.