2008 OK 17

**In the Matter of the REINSTATEMENT OF Michael L. DeBACKER, to Membership in the Oklahoma Bar Association and to the Roll of Attorneys.**

No. SCBD–5287.

Supreme Court of Oklahoma.

Feb. 26, 2008.

---

Janis Hubbard, Assistant General Counsel, Oklahoma Bar Association, Oklahoma City, OK, for Complainant.

Larry Derryberry, Pete G. Serrata, Oklahoma City, OK, for Petitioner.

KAUGER, J.

¶1 A former member of the Oklahoma Bar Association seeks reinstatement pursuant to Rule 11, Rules Governing Disciplinary Proceedings, 5 O.S. Supp.2002, Ch. 1, App. 1–A.[1]

---

1. Rule 11.1, Rules Governing Disciplinary Proceedings, 5 O.S. Supp.2002, Ch. 1, App. 1–A, provides:

A person whose name has been stricken from the Roll of Attorneys for non-payment of dues, or who has been suspended from the practice of law for a period of longer than two (2) years or disbarred, or who has resigned membership in the Association, may be readmitted to the practice of law only through the following procedures:

(a) The applicant shall file an original and ten copies of a petition for reinstatement with the Clerk of the Supreme Court, and attach thereto

The Bar Association and the trial panel recommended reinstatement.[2] Upon a *de novo* review, we hold that the petitioner was engaged in the unauthorized practice of law for twenty-seven years and his conduct encompassed misrepresentation. The petitioner remains suspended until April 10, 2008, and the petitioner is ordered to pay costs of $1,553.49 as well as his past bar dues, which total $4,425.00. Payment of $5,978.49 is due before April 10, 2008.

## FACTS AND PROCEDURAL BACKGROUND

¶2 The petitioner, Michael L. DeBacker, graduated from Washburn University School of Law in Topeka, Kansas in December of

(1) an affidavit showing all of the applicant's activities since the termination or suspension of his right to practice law and the applicant's place or places of residence since that date; and (2) the applicant's affidavit and the affidavits of the court clerks in the several counties in which he has resided, establishing that the applicant has not practiced law in their respective courts since the termination or suspension of his right to practice law. The applicant shall concurrently furnish a copy of said petition and all other documents filed with the Clerk of the Supreme Court to the General Counsel of the Oklahoma Bar Association.
(b) If any funds of the Client's Security Fund of the Oklahoma Bar Association have been expended on behalf of the applicant, the applicant must show the amount paid and that the same has been repaid to the Oklahoma Bar Association to reimburse such Fund.
(c) The applicant shall pay a fee to cover the expenses of investigating and processing the application as determined by the Professional Responsibility Tribunal. In addition, the applicant shall pay the cost of the original and one copy of the transcript of any hearings held in connection with the application.
(d) The applicant shall, if required by the Professional Responsibility Tribunal, procure at the applicant's expense and cause to be filed any report required by the Professional Responsibility Tribunal of the applicant's activities during any time after termination or suspension that the applicant has resided outside the state.
(e) The applicant shall not be permitted to file an application for reinstatement, after disbarment or resignation pending investigation or disciplinary proceedings, within five (5) years of the effective date of the order of the Court disbarring the applicant or accepting the resignation, nor shall any applicant be permitted to file an application for reinstatement within one (1) year after the Supreme Court has denied an earlier application.

1972. After he graduated and successfully completed the bar examination, DeBacker became a member of the Kansas Bar Association. He began working for the Federal Trade Commission's Kansas City Regional Office as General Attorney–Trade Regulation.

¶3 In November of 1975, the petitioner left Kansas and moved to Oklahoma to work at Phillips Petroleum Company. DeBacker successfully completed the Oklahoma Bar Examination and was admitted to the Roll of Attorneys on July 10, 1976. When the petitioner left Kansas, he did not provide a forwarding address, nor did he pay Kansas bar dues. As a result of his failure to pay dues,

2. Rule 11.5, Rules Governing Disciplinary Proceedings, 5 O.S.2001, Ch. 1, App. 1–A provides:

At the conclusion of the hearing held on the petition for reinstatement, the Trial Panel of the Professional Responsibility Tribunal shall file a report with the Supreme Court, together with the transcript of the hearing. Said report shall contain specific findings upon each of the following:
(a) Whether or not the applicant possesses the good moral character which would entitle him to be admitted to the Oklahoma Bar Association;
(b) Whether or not the applicant has engaged in any unauthorized practice of law during the period of suspension, disbarment or resignation;
(c) Whether or not the applicant possesses the competency and learning in the law required for admission to practice law in the State of Oklahoma, except that any applicant whose membership in the Association has been suspended or terminated for a period of five (5) years or longer, or who has been disbarred, shall be required to take and successfully pass the regular examination given by the Board of Bar Examiners of the Oklahoma Bar Association. Provided, however, before the applicant shall be required to take and pass the bar examination, he shall have a reasonable opportunity to show by clear and convincing evidence that, notwithstanding his long absence from the practice of law, he has continued to study and thus has kept himself informed as to current developments in the law sufficient to maintain his competency. If the Trial Panel finds that such evidence is insufficient to establish the applicant's competency and learning in the law, it must require the applicant to take and pass the regular bar examination before a finding as to his qualifications shall be made in his favor.

Kansas suspended DeBacker's license on November 18, 1976. Because he did not provide a forwarding address, DeBacker never received notice of the Kansas suspension.

¶ 4 In August of 1979, DeBacker moved from Oklahoma to Ohio to work in the legal department of Dana Corporation. DeBacker neglected to notify the Oklahoma Bar Association of his move or of his new address, nor did he pay the annual registration fee required to maintain an Oklahoma license. On October 15, 1980, we suspended the petitioner from the practice of law in Oklahoma for non-payment of dues. His name was stricken from the Roll of Attorneys on December 18, 1981. Because of his failure to provide a forwarding address, DeBacker did not receive notification of the Oklahoma suspension.

3. Ohio Supreme Court Rules for the Government of the Bar of Ohio, Rule VI, Registration of Attorneys provides in pertinent part:

**Section 3.   Attorneys not Admitted in Ohio.**
(A) An attorney who is admitted to the practice of law in another state or in the District of Columbia, but not in Ohio, and who is employed full-time by a nongovernmental Ohio employer may register for corporate status by filing a Certificate of Registration and paying the fee as required by Section 1 of this rule. The Office of Attorney Registration and CLE may require additional information and documents, including a certificate of admission and good standing from the jurisdiction in which the attorney is admitted, from an attorney who registers for corporate status. An attorney who is registered for corporate status may perform legal services in Ohio solely for a nongovernmental Ohio employer, as long as the attorney is a full-time employee of that employer. Registration under this section shall be effective and may be renewed biennially only as long as the attorney is so employed. An attorney who is granted corporate status shall promptly notify the Office of Attorney Registration and CLE in writing upon termination of fulltime employment with the Ohio employer.
(B) An attorney who is registered for corporate status may not practice before any court or agency of this state on behalf of the attorney's employer or any person except himself or herself, unless granted leave by the court or agency.
(C) An attorney who is admitted to the practice of law in another state or in the District of Columbia, but not in Ohio, and who performs legal services in Ohio for his or her employer, but fails to register in compliance with this

¶ 5 DeBacker did not take the Ohio Bar Examination. Instead, he registered under Rules of the Supreme Court of Ohio as an in-house corporate counsel in 1985.[3] The Supreme Court of Ohio allows corporate lawyers to register as a corporate counsel without an Ohio license as long as the lawyer pays a registration fee, complies with continuing education requirements and is licensed in another state.[4] On August 6, 1993, the Ohio Supreme Court suspended DeBacker from the corporate registry for failure to timely file a "biennium" continuing education report. DeBacker immediately requested reinstatement, but because the reinstatement petition was never docketed in the Supreme Court of Ohio, the petition was not acted upon. DeBacker assumed, without checking, that he had been reinstated. Nevertheless, he admits that he failed to properly maintain his Ohio registration after 1995.[5]

section or does not qualify to register under this section, may be referred for investigation of the unauthorized practice of law under Gov. Bar. R. VII and shall be precluded from applying for admission without examination under Gov. Bar. R. I. . . .
According to the consent agreement entered into with Ohio, current records of the Supreme Court of Ohio show that DeBacker was registered for Dana Corporation from 1985 until 1993.

4. Ohio Supreme Court Rules for the Government of the Bar of Ohio, Rule VI, Registration of Attorneys, see note 3, supra.

5. DeBacker entered into a consent agreement with the Office of Disciplinary Counsel of the Supreme Court of Ohio. The agreement which is identified as exhibit 38 provides in pertinent part:

. . . 13. Current records of the Supreme Court of Ohio show that Mr. DeBacker was registered in the State of Ohio as in-house corporate counsel for Dana Corporation from 1985 until 1993. All representations Mr. DeBacker made to obtain his registrations were true to the best of his knowledge and belief at the time he made them. He submitted his registration for the 1993–95 biennium on or about July 28, 1003. (Exhibit 1.) His corporate registration, however, was suspended on August 6, 1993 due to his failure to timely file a CLE report. (Exhibit 2.)
14. Mr. DeBacker immediately prepared a Petition for Reinstatement for filing in the Supreme Court of Ohio and, on August 26, 1993, he sent a copy of the Petition to The Supreme Court of Ohio, Commission on Continuing Legal Education along with the required $300

¶ 6 DeBacker worked his way up through various positions in Dana Corporation's legal department until he was appointed Vice President and Assistant General Counsel of Dana Corporation in January of 1994. Sometime shortly before April of 2007, DeBacker was contacted by a reporter who was writing a story for a national law publication about corporate counsels for large United States companies who were not licensed to practice law. DeBacker contends that this was the first time he realized that he might not be properly registered anywhere. The petitioner contacted lawyers in Kansas and Oklahoma for help in determining whether he was registered in either state.

¶ 7 On April 10, 2007, after learning that he was not registered in either Kansas or Oklahoma, DeBacker ceased to act as Vice President and General Counsel of Data Corporation. He remained employed with the corporation in a nonlegal capacity. The petitioner self-reported his admitted unauthorized practice of law to the Ohio Supreme Court on April 13, 2007.

¶ 8 DeBacker entered into a consent agreement with the Ohio Supreme Court wherein he admitted to the unauthorized practice of law. The Ohio Disciplinary Counsel agreed not to file a complaint against DeBacker for the unauthorized practice of law as long as he avoided engaging in any activities which constituted the unauthorized practice of law after April 10, 2007. On March 30, 2007, in an apparent attempt to resolve the problem with his Ohio corporate registration, DeBacker filed a petition for reinstatement in this Court. In May and June of 2007, DeBacker completed 18 hours of continuing education courses in Oklahoma which included video replays of courses of-

fered in 2006 and 2005, as well as 15.5 hours in Ohio.

¶ 9 After a hearing on June 8, 2007, the professional responsibility tribunal found that: 1) DeBacker has not engaged in the unauthorized practice of law in Oklahoma; 2) no harm resulted in his technical oversight of unintentional practice without proper membership; 3) he acted professionally and self-reported his violations when discovered; 4) DeBacker undeniably possesses the highest competence in the law; and 5) he is a lawyer who has been, is and will continue to be an asset to the integrity of the legal profession. The tribunal recommended reinstatement. On July 26, 2007, the Bar Association filed an application to assess costs in the amount of $1,553.49 against the petitioner. The briefing cycle was completed on August 6, 2007, when the parties filed a joint waiver of briefs.

¶ 10 **BECAUSE THE PETITIONER ENGAGED IN THE UNAUTHORIZED PRACTICE OF LAW FOR TWENTY SEVEN YEARS AND HIS CONDUCT ENCOMPASSED MISREPRESENTATION, HE REMAINS SUSPENDED UNTIL APRIL 10, 2008, AND IS REQUIRED TO PAY COSTS AND PAST DUES.**

¶ 11 The petitioner and the Bar Association argue that DeBacker's Oklahoma license should be reinstated. Often, when an attorney is suspended from the Oklahoma Bar Association unrelated to a disciplinary matter, such as for nonpayment of dues, it is because, for whatever reason, the attorney is no longer practicing law within Oklahoma and/or no longer needs to maintain an Oklahoma license to practice law anywhere else.[6]

reinstatement fee. (Exhibit 3.) He asked the Commission to attach an affidavit to the Petition for Restatment [sic] confirming his full compliance with his CLE obligations. He asked the Commission to recommend to the Court that he be reinstated. Mr. DeBacker received a 'Notification of Registration—Corporate Status' for the September 1, 1993–August 31, 1995 biennium (Exhibit 4). Receipt of this Notification lead him to believe that the petition had been granted and that he was appropriately registered as in-house counsel for the 1993–95 biennium. He did not maintain the registration after 1995. Mr. DeBacker learned

on April 13, 2007 that the Petition for Reinstatement had not been docked in the Supreme Court of Ohio....

6. For example, we recently had reinstatement requests from lawyers who had been suspended for nonpayment of dues. In *Matter of Reinstatement of Wynne*, 2007 OK 87, 176 P.3d 346, the lawyer was suspended for nonpayment of dues and went to work in a nonlawyer capacity for an engineering firm. In *Matter of Reinstatement of Burkett*, 2005 OK 23, 114 P.3d 444, the lawyer was suspended for nonpayment of dues and never practiced law. In *Matter of Reinstatement of*

Under such circumstances, we have reinstated many attorneys who have made an adequate showing for reinstatement pursuant to Rule 11.1, Rules Governing Disciplinary Proceedings, 5 O.S. Supp.2002, Ch.1, App. 1–A.[7]

¶ 12 Unlike a typical reinstatement case, this cause presents an attorney who has held himself out as licensed in Oklahoma for over 30 years and relied upon that license to practice law in another state, when in fact he had been suspended for all but three of those years. This Court faced a similar situation a few years ago in the *Matter of Reinstatement of Sperry*, SCBD No. 4800 (2003), when it issued a reinstatement order which was published only in the Oklahoma Bar Journal.

¶ 13 *Sperry* involved a patent attorney who became a member of the Oklahoma Bar Association in 1959. A few months later, he moved to another state without providing a forwarding address. Except for a brief residence in Tulsa in 1963–64, Sperry always resided outside Oklahoma. He practiced exclusively in the area of federal patent law for 45 years, but never paid any Oklahoma Bar dues or kept current on Oklahoma law and never bothered to inquire about his membership status. Sperry did not attend any continuing legal education courses, nor did he claim exemption as a nonresident attorney from the necessity of filing an annual report as mandated by Rule 2, Rules Governing Continuing Legal Education, 5 O.S.2001, Ch. 1, App. 1–B.[8] In 1965, Sperry was suspended from the Oklahoma Bar Association for nonpayment of dues.[9]

¶ 14 Despite Sperry's non-payment of dues, and despite his ignorance of Oklahoma law over the many years subsequent to his admission, this Court reinstated Sperry to the Roll of Attorneys licensed to practice law in Oklahoma and ordered him to pay his current annual dues of $175.00. This decision was reached despite its apparent conflict with previous decisions such as *Matter of Reinstatement of Phillips*, 1996 OK 62, 919 P.2d 419,[10] or *Matter of Reinstatement of Essman*, 1987 OK 102, 749 P.2d 103.[11] Today, we have an opportunity to revisit circumstances similar to *Sperry* and to address

*Tubb*, 2007 OK 66, 174 P.3d 996, the lawyer voluntarily resigned from the bar to resume a full-time nursing career.

7. Rule 11.1, Rules Governing Disciplinary Proceedings, 5 O.S. Supp.2002, Ch. 1, App. 1–A, see note 1, supra.

8. Rule 2, Rules Governing Continuing Legal Education, 5 O.S.2001, Ch. 1, App. 1–B provides in pertinent part:

   (a) Except as provided herein these rules shall apply to every active member of the Oklahoma Bar Association as defined by Article 11 of the Rules Creating and Controlling the Oklahoma Bar Association....
   (e) An attorney who, during the entire reporting period, is a nonresident of the State of Oklahoma and did not practice law in the State of Oklahoma is exempt from the educational requirements of these rules.
   (f) An attorney who files an affidavit with the Commission on Mandatory Continuing Legal Education of the Oklahoma Bar Association stating that the attorney did not practice law during the reporting period is exempt from the educational requirements of these rules.
   (g) Any person claiming an exemption hereunder is required to file an annual report in compliance with these rules and regulations.

9. At the time of Sperry's suspension, the rules in effect provided for annual bar dues for active

members of the bar as well as a reduced rate for inactive members.

10. The majority in *Sperry* did not address or reconcile causes such as *Phillips* or *Essman*. *Phillips* involved a reinstatement petition of an attorney stricken from the roll of attorneys for failure to complete mandatory continuing legal education requirements and for neglecting to pay dues. As a condition for reinstatement, this Court required the attorney to file MCLE reports, one for each calendar year claiming an exemption for his nonresidency. Recognizing that an attorney who does not, within one year of suspension, file an application for nonpayment of dues ceases to be a member of the Bar Association, the attorney's reinstatement was conditioned on his payment of all delinquent dues combined with dues for the year he sought readmittance along with the costs of the proceeding.

11. In *Essman* we allowed an individual suspended from the practice of law for a period in excess of five years to resume membership in the Bar Association without successfully passing the bar examination because he had maintained a working knowledge of an area of oil and gas law while he was employed as a landman. Although the Court noted this as sufficient to establish a continuing competency in a significant area of the practice of law, we also recognized that the applicant had completed thirty-four hours of MCLE courses.

our application of Rule 11, Rules Governing Disciplinary Proceedings, 5 O.S. Supp.2002, Ch.1, App. 1–A.[12]

¶ 15 A person whose name has been stricken from the Roll of Attorneys whether for nonpayment of dues, suspension, or disbarment, must apply for reinstatement through the procedures provided by Rule 11, Rules Governing Disciplinary Proceedings, 5 O.S. Supp.2002, Ch. 1, App. 1–A.[13] Rule 11.4 requires an applicant prove by clear and convincing evidence that: 1) if readmitted or if the suspension is removed, the applicant's conduct will conform to the high standards required of a member of the Bar; and 2) the applicant is more qualified than one seeking admission for the first time.[14]

¶ 16 When evaluating a petition for reinstatement, the Court considers: 1) the severity of the original offense and the circumstances surrounding it; 2) whether the applicant possesses the good moral character which would entitle the applicant to admission to the practice of law; 3) whether the applicant engaged in any unauthorized practice of law during suspension; and 4) whether the applicant possesses competency and learning in the law required for admission.[15] The Court takes such actions as it deems appropriate based on the record and the trial panel report.[16] With these requirements in mind, we turn to the petition before us.

### a. Conduct Which Would Potentially Gives Rise to Sanctions.

¶ 17 Had this cause come before us in the guise of a complaint, rather than an application for readmittance, DeBacker's actions could be regarded as sanctionable misrepresentation.[17] After the petitioner passed the

12. Rule 11.1, Rules Governing Disciplinary Proceedings, 5 O.S. Supp.2002, Ch. 1, App. 1–A, see note 1, supra. Rules Creating and Controlling the Oklahoma Bar Association, 5 O.S.2001, art. 8, § 5, Ch.1, App. 1 provides:

A suspended member who does not file an application for reinstatement within one year from the date he is suspended by the Supreme Court for nonpayment of dues shall cease automatically to be a member of the Association and the Board of Governors shall cause his name to be stricken from the membership rolls. Thereafter, if he desires to become a member of the Association, he will be required to make application for reinstatement, as provided in Rule 11 of the Rules Governing Disciplinary Proceedings.

13. Rule 11, Rules Governing Disciplinary Proceedings, 5 O.S. Supp.2002, Ch. 1, App. 1–A, see note 1, supra.

14. Rule 11.4, Rules Governing Disciplinary Proceedings, 5 O.S.2001, Ch. 1, App. 1–A provides:

An applicant for reinstatement must establish affirmatively that, if readmitted or if the suspension from practice is removed, the applicant's conduct will conform to the high standards required of a member of the Bar. The severity of the original offense and the circumstances surrounding it shall be considered in evaluating an application for reinstatement. The burden of proof, by clear and convincing evidence, in all such reinstatement proceedings shall be on the applicant. An applicant seeking such reinstatement will be required to present stronger proof of qualifications than one seeking admission for the first time. The proof presented must be sufficient to overcome the Supreme Court's former judgment adverse to the applicant. Feelings of sympathy toward the applicant must be disregarded. If applicable, restitution, or the lack thereof, by the applicant to an injured party will be taken into consideration by the Trial Panel on an application for reinstatement. Further, if applicable, the Trial Panel shall satisfy itself that the applicant complied with Rule 9.1 of these Rules. *Matter of Reinstatement of Massey,* 2006 OK 21, ¶ 12, 136 P.3d 610; *Matter of Reinstatement of Blevins,* 2002 OK 78, ¶ 3, 59 P.3d 510; *Matter of Reinstatement of Gassaway,* 2002 OK 48, ¶ 3, 48 P.3d 805.

15. Rule 11.4, Rules Governing Disciplinary Proceedings, see note 14, supra; Rule 11.5, Rules Governing Disciplinary Proceedings, see note 2, supra.

16. Rule 11.6, Rules Governing Disciplinary Proceedings, 5 O.S.2001, Ch. 1, App. 1–A provides:

After the filing of the Trial Panel's report, together with the petition for reinstatement, the transcript of the hearing and all exhibits offered thereat, with the Supreme Court, the Court may request that briefs be filed. Thereafter, the Court will take such action as it deems appropriate on the petition, based upon the record and the Trial Panel's report, or if it deems that the ends of justice require, the Court may remand the matter to the Professional Responsibility Tribunal for additional proceedings.

17. Rule 8.4(c), Rules of Professional Conduct, 5 O.S.2001, Ch. 1, App. 3–A providing:

It is professional misconduct for a lawyer to: (c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation.

bar examination and was entered on the Roll of Attorneys, he relied upon his Oklahoma and/or Kansas license to maintain his Ohio registration. When his Oklahoma and Kansas membership lapsed, he continued to represent to Ohio that he was licensed in Oklahoma and Kansas, but at no time did he make any attempt to verify his membership in either state. The petitioner became concerned with his bar membership only after an investigative reporter contacted him regarding his credentials.

¶ 18 Attorneys admitted to practice law in Oklahoma are part of the judicial system of Oklahoma and act as officers of its courts.[18] Membership of the association consists of persons who are, and remain, licensed to practice law in this State.[19] There are three categories of Bar Association members: 1) active; 2) senior; and 3) associate.[20] Inac-

---

**18.** Rules Creating and Controlling the Oklahoma Bar Association, 5 O.S.2001, art. 1, § 2, Ch. 1, App. 1 provides:

> Attorneys admitted to practice law in Oklahoma are a part of the judicial system of Oklahoma and officers of its courts.

**19.** Rules Creating and Controlling the Oklahoma Bar Association, 5 O.S.2001, art. 2, § 3, Ch. 1, App. 1 provides:

> (a) Any member may resign his membership in the Association by filing with the Executive Director a written resignation, whereupon he shall automatically cease to be a member and shall not thereafter be entitled to the privileges and advantages of membership in the Association. The Executive Director shall publicize the fact of resignation and shall cause a record thereof to be made in the records of the Association and of the Clerk of the Supreme Court.
> (b) Any member who resigns shall remain subject to the Supreme Court's disciplinary jurisdiction and procedures for any misconduct committed while a member of the Oklahoma Bar Association. If, at the time of resignation, disciplinary proceedings or investigations which result in disciplinary proceedings are pending against the resigning member, the files and records thereof together with evidence later obtained, shall be impounded by the Board of Governors and shall be considered in connection with any subsequent application for reinstatement or with subsequent disciplinary action against him.
> A member who resigns pending disciplinary proceedings or pending investigation which might result in disciplinary proceedings must do so upon a form prescribed by the General Counsel, approved by the Chief Justice, so drawn as to elicit acknowledgment that the resignation is submitted pending disciplinary proceedings or investigation of charges, specifying particularly the misconduct alleged; that the resignation is voluntary and with knowledge of its consequences; that the member agrees that he may be reinstated only upon full compliance with the condition and procedure prescribed by these rules; and that no application for reinstatement may be filed prior to the lapse of five (5) years from the date of resignation.

**20.** Rules Creating and Controlling the Oklahoma Bar Association, 5 O.S.2001, art. 2, § 2, Ch. 1, App. 1 provides:

> Members of the Association shall be divided into three classes, namely, (a) active members, (b) senior members, and (c) associate members. No other categories of membership may be allowed. The annual dues shall be paid according to Art. VIII, § 1. *Tweedy v. Oklahoma Bar Assoc.*, 624 P.2d 1049, 1052 (Okla. 1981); *R.J. Edwards, Inc. v. Hert*, 504 P.2d 407, 415 (Okla.1972); *In re Integration of State Bar*, 185 Okla. 505, 95 P.2d 113 (1939).
> (a) Active Members. Active members shall be all members not enrolled as senior members, or associated members.
> (b) Senior Members. An active member in good standing who is seventy years of age as of the first day of January of the then current year, may become a senior member by filing with the Executive Director his statement, setting forth the month, day and year of his birth and requesting senior membership. Thereafter, he shall be entitled to all the privileges and advantages of active membership in the Association without payment of further dues, with the exception that he shall not receive the Bar Journal free of charge. If a senior member desires to receive the Bar Journal, the annual subscription cost shall be $25.00.
> (c) Associate Member. A member in good standing who files, or on whose behalf there is filed, with the Executive Director, a statement that, by reason of illness, infirmity, or other disability, he is unable to engage in the practice of law shall become an associate member of the Association for the duration of such illness, infirmity or other disability and until he is restored to his former classification. An associate member shall not engage in the practice of law or be required to pay dues during such period. He may, on annual request, receive the Journal during his disability. The member, on causing an appropriate showing thereof to be made to the Executive Director, shall be reclassified to the membership held prior to such illness, infirmity or other disability and shall be required to pay the dues applicable thereto beginning January 2 next following such reclassification and to pay the cost of the Journal during such disability if he has elected to receive it.
> (d) Reclassification to Active Membership— Showing Competence. Whenever a member

**514**

tive members of the Bar Association may not practice law.[21] Furthermore, Bar Association members may not shroud themselves in titles placing them beyond the powers of this Court.[22]

 ¶ 19 The attorney should have been aware of his status or at least on notice that he was not in compliance with the Bar Association Rules. He presumed he was a member of the Oklahoma Bar Association, but never paid dues required for membership after 1980. Everyone is presumed to know the law.[23] Furthermore, attorneys are charged with the responsibility to understand the limits law places on their authority.[24] Even without actual notice of his suspension, the attorney was not justified in assuming he was a member, nor was he justified in relying on his assumed membership to practice law in another state. DeBacker was not a member in good standing of any bar association and he misrepresented his status.

¶ 20 The general public should be protected from attorney misrepresentations.[25] An attorney need not engage in inherently sinister activity to be the subject of discipline.[26] Rather, any act contrary to prescribed standards of conduct, whether in the course of professional capacity or otherwise, which brings discredit upon the legal profession may result in disciplinary action.[27] Licensed lawyers present themselves to the public as persons worthy in the performance of all professional activities.[28] An attorney whose name is stricken from the membership rolls ceases to be a member of the Oklahoma Bar Association.[29]

¶ 21 Having been notified that DeBacker had been representing himself as registered in Ohio based on his licensure in Oklahoma, the General Counsel of the Bar or the Professional Responsibility tribunal could have filed disciplinary proceedings against the at-

---

seeks restoration to active membership after the lapse of two (2) years or less, he may be reinstated as provided in Rule 11.8 of the Rules Governing Disciplinary Proceedings. After the lapse of more that two (2) years, an associated member may be restored to active membership upon compliance with Rule 11.1 through Rule 11.7 of the Rules Governing Disciplinary Proceedings.
(e) Voting Members Defined. Active and senior members shall constitute the voting members of the Association.

21. Rules Creating and Controlling the Oklahoma Bar Association, 5 O.S.2001, art. 2, § 7, Ch. 1, App. 1 provides:
(a) No person, corporation, partnership, or any other entity (hereinafter collectively referred to as "person"), shall practice law in the State of Oklahoma who is not an active member of the Association, except as herein provided.
(b) Any member of the Association who shall have been adjudged to be insane, mentally incompetent, or mentally ill shall not practice law, and shall not be required to pay dues during the continuation of such adjudication.
(c) It shall be the duty and responsibility of this Association, acting through the Professional Responsibility Commission, to investigate and to seek judicial action to prevent the unauthorized practice of law by any person, and to take appropriate action to enforce any lawful orders issued in such proceedings.

22. Rule 1.1, Rules Governing Disciplinary Proceedings, 5 O.S.2001, Ch. 1, App. 1–A provides:
The Oklahoma Bar Association is an official arm of this Court, when acting for and on

behalf of this Court in the performance of its governmental powers and functions.

23. *Nottingham v. City of Yukon*, 1988 OK 130, ¶ 11, 766 P.2d 973; *Halstead v. McHendry*, 1977 OK 131, ¶ 12, 566 P.2d 134; *American Perforating Co. v. Oklahoma State Bank*, 1970 OK 4, ¶ 22, 463 P.2d 958.

24. *Vinson v. Davis*, 1919 OK 243, ¶ 5, 183 P. 902.

25. *State ex rel. Oklahoma Bar Ass'n v. Durland*, 2003 OK 32, ¶¶ 6–7, 66 P.3d 429.

26. *State ex rel. Oklahoma Bar Ass'n v. Giessmann*, 1997 OK 146, ¶ 9, 948 P.2d 1227. See, Rule 1.3, Rules Governing Disciplinary Proceedings, 5 O.S.2001, Ch. 1, App. 1–A provides:

The commission by any lawyer of any act contrary to prescribed standards of conduct, whether in the course of his professional capacity, or otherwise, which act would reasonably be found to bring discredit upon the legal profession, shall be grounds for disciplinary action, whether or not the act is a felony or misdemeanor, or a crime at all. Conviction in a criminal proceeding is not a condition precedent to the imposition of discipline.

27. Rule 1.3, Rules Governing Disciplinary Proceedings, see note 26, supra.

28. *State ex rel. Oklahoma Bar Ass'n v. Raskin*, 1982 OK 39, ¶ 19, 642 P.2d 262.

29. *Matter of Reinstatement of Phillips*, 1996 OK 62, ¶ 9, 919 P.2d 419.

torney. However, we are mindful that while DeBacker was without a doubt negligent regarding his Oklahoma license, his oversight was not intentional. Furthermore, when notified of his neglectful behavior, he immediately self-suspended from the practice of law and reported himself to the Ohio Supreme Court. These factors reflect his moral character.

### b. Conduct Regarding the Unauthorized Practice of Law and Competency in the Law.

¶ 22 DeBacker admits to the unauthorized practice of law in Ohio. The Ohio Supreme Court agreed not to file a complaint for such conduct as long as he ceased the practice of law altogether. The unauthorized practice of law violates the rules of professional conduct, thereby exposing an attorney to disciplinary sanctions.[30] Rule 5.5, Rules of Professional Conduct, 5 O.S.2001 Ch. 1, App. 3–A, ad-

dresses the unauthorized practice of law and provides in pertinent part:

> a) A lawyer shall not practice law in a jurisdiction in violation of the regulation of the legal profession in that jurisdiction, or assist another in doing so. . . .

■ ¶ 23 Every lawyer is responsible for observance of the Rules of Professional Conduct.[31] It is in the public's interest that this Court prohibit attorneys from performing illegal acts such the unauthorized practice of law.[32] When considering reinstatement, we look at whether the petitioner has engaged in **any** unauthorized practice of law [33] regardless of whether it occurred within the State of Oklahoma, or in another jurisdiction.[34] Attorneys who have engaged in unauthorized practice have resigned from the Bar Association,[35] been denied reinstatement,[36] or have been subject to discipline ranging from a public censure to disbarment depending on mitigating circumstances.[37] Two of these

**30.** *Norton v. Hughes,* 2000 OK 32, ¶ 13, 5 P.3d 588.

**31.** Preamble, Rules of Professional Conduct, 5 O.S.2001, Ch. 1 App. 3–A.

**32.** *Norton v. Hughes,* see note 30, supra at ¶ 12.

**33.** Rule 11.1, Rules Governing Disciplinary Proceedings, see note 1, supra; Rule 11.5, Rules Governing Disciplinary Proceedings, see note 2, supra.

**34.** *See, State ex rel. Oklahoma Bar Ass'n v. Burnett,* 2004 OK 31, ¶ 10, 91 P.3d 641 [Attorney who failed to notify Bar Association of disbarment by bankruptcy court as well as out-of-state unauthorized practice of law was given public censure]; *State ex rel. Oklahoma Bar Ass'n v. Gentry,* 2003 OK 95, ¶ 9, 80 P.3d 135 [Attorney subject to public censure for failing to inform the Bar that he had been disciplined by another jurisdiction where he was investigated for the unauthorized practice of law]; *State ex rel. Oklahoma Bar Ass'n v. Mothershed,* 2003 OK 34, ¶ 38, 66 P.3d 420 [Attorney discipline enhanced to disbarment for, among other things, engaging in the unauthorized practice of law in Arizona]; *Matter of Reinstatement of Low,* 2007 OK 42, —— P.3d ——, 2007 WL 1498330 [Attorney applying for reinstatement had not engaged in the unauthorized practice of law in Oklahoma or Oregon]; *Matter of Reinstatement of Hightower,* 32 P.3d 856 (2001) [Investigation uncovered no evidence that petitioner engaged in the unauthorized practice of law in Oklahoma or any other jurisdiction].

**35.** *State ex rel. Oklahoma Bar Ass'n v. Miller,* 2006 OK 55, ¶ 1, 142 P.3d 425; *State ex rel. Oklahoma Bar Ass'n v. Bourland,* 2001 OK 12, ¶ 4, 19 P.3d 289; *State ex rel. Oklahoma Bar Ass'n v. Johnston,* 2000 OK 80, ¶ 1, 14 P.3d 544; *State ex rel. Oklahoma Bar Ass'n v. Loewenherz,* 1998 OK 74, ¶ 2, 969 P.2d 336.

**36.** *See, Matter of Reinstatement of Fulp,* 2001 OK 19, 19 P.3d 293 [Attorney's second attempt for reinstatement was approved, but initial attempt was denied based on an unreported incident involving the unauthorized practice of law].

**37.** *State ex rel. Oklahoma Bar Ass'n v. Patterson,* 2001 OK 51, ¶ 31, 28 P.3d 551 [Attorney misconduct in engaging in the unauthorized practice of law in the federal circuit court during a period of suspension subject to public censure]; *State ex rel. Oklahoma Bar Ass'n v. O'Neal,* 1993 OK 61, ¶ 8, 852 P.2d 713 [Attorney publicly censured for unauthorized practice of law while under suspension for nonpayment of bar dues and noncompliance with CLE requirements]; *State ex rel. Oklahoma Bar Ass'n v. Wagener,* 2005 OK 3, ¶ 13, 107 P.3d 567 [Engaging in unauthorized practice of law during suspension and failure to file petition in error and notify client warranted six month suspension]; *State ex rel. Oklahoma Bar Association v. Malloy,* 2006 OK 38, ¶ 13, 142 P.3d 383 [Attorney suspended for nine months for unauthorized practice of law]; *State ex rel. Oklahoma Bar Ass'n v. Patmon,* 1997 OK 62, ¶ 7, 939 P.2d 1155 [Attorney, who among other things, assisted secretary in the unauthorized practice of law suspended for two years and one day]; *State ex rel. Bar Ass'n v. Holden,* 1996 OK

cases involve lawyers who were suspended for the nonpayment of dues and who engaged in the unauthorized practice of law.

¶ 24 In *State ex rel. Oklahoma Bar Ass'n v. O'Neal,* 1993 OK 61, ¶ 18, 852 P.2d 713, the Court publicly censured an attorney who, after being suspended for nonpayment of bar dues and noncompliance with the Mandatory Continuing Legal Education requirements, filed two voluntary bankruptcy petitions on behalf of clients. The attorney filed the petitions only after seeking other attorneys to handle the matters. When he could not obtain any other counsel, rather than leave his clients without representation, he filed the petitions. Because there was no injury to the clients, the attorney did not act out of selfish motive, and there was no other evidence of prior discipline, the Court administered a public censure.

¶ 25 In *Matter of Reinstatement of Turner,* 1999 OK 72, ¶ 22, 990 P.2d 861, we denied reinstatement to a lawyer who was suspended for failure to pay dues and comply with Mandatory Continuing Legal Education requirements. The lawyer had engaged in the unauthorized practice of law during the suspension by representing two defendants in criminal matters and acting as the City Attorney for the City of Holdenville. The only evidence of competency and learning of the law presented was that the attorney had attended twenty-four hours of continuing education four years earlier and read the Oklahoma Bar Journal and other legal articles.

 ¶ 26 Here, while working for the corporation, DeBacker never stepped foot in a courtroom to represent the corporation, nor does it appear the corporation was injured by the fact that he was not licensed. In addition to attending continuing legal education, DeBacker presented numerous letters rec-

ommending reinstatement from attorneys who have known DeBacker for many years and who had first hand knowledge of his legal skills, character, and competence. We are convinced that DeBacker has meet his overall burden of proof by clear and convincing evidence that he should be reinstated. However, we are persuaded by previous cases that some form of discipline should be imposed for his misrepresentations and unauthorized practice of law. Considering that the misrepresentations were neglectful, but not intentional, and that he voluntarily withdrew from practicing law on April 10, 2007, and self-reported to the Ohio Supreme Court, his reinstatement will be deferred until April 10, 2008, which results in a one-year suspension from the practice of law.

**c. Payment of costs and past bar dues.**

¶ 27 Pursuant to Rule 11, Rules Governing Disciplinary Proceedings, 5 O.S. Supp.2002, Ch. 1, App. 1–A,[38] we assess $1,553.49, the costs of this proceeding, against the petitioner. In order to comply with the Oklahoma Bar Association dues requirements, the Bar Association has already assessed dues and late fees of $150.00 for each of the calendar years 1980 and 1981 against the petitioner and that amount has been paid. Neither the 2007 nor the 2008 dues has been paid by DeBacker.

¶ 28 DeBacker has been relying on his Oklahoma Bar license, even though he was suspended, since 1980 to maintain his Ohio registration and legal employment in Ohio. In equity and fairness to other attorneys who have paid and continue to pay dues to maintain their license, we condition the petitioner's reinstatement on the payment of dues from 1982 to 2008, which total $4,425.00, coupled with the costs of this proceeding for a total amount of $5,978.49.[39] Payment is due before April 10, 2008.

88, ¶ 8, 925 P.2d 32 [Attorney suspended from the practice of law for two years and one day for the unauthorized practice of law while under disciplinary suspension]; *State ex rel. Oklahoma Bar Ass'n v. Wolfe,* 1997 OK, 47, ¶ 13, 937 P.2d 988 [Attorney disbarred because of unauthorized practice of law while under disciplinary suspension coupled with other misconduct]; *State ex rel. Oklahoma Bar Ass'n v. Downing,* 1993 OK 44, ¶ 15, 863 P.2d 1111 [Attorney disbarred because while under suspension, engaged in the

unauthorized practice of law, lied to a client about the status of a case and about the attorney's ability to continue representation, and failed to act with due diligence and competence].

**38.** Rule 11.1, Rules Governing Disciplinary Proceedings, see note 1, supra.

**39.** From 1980–1988, the Bar dues were $100.00 annually. In 1989, the Bar dues were increased to $175.00 annually and in 2005, they again

## CONCLUSION

¶ 29 We are free to accept or to reject the trial panel's recommendations and take any action we deem appropriate [40] as the final arbiter in the reinstatement proceeding.[41] This Court strives to be evenhanded and fair in consideration of matters involving attorneys in this state.[42] In doing so, any unique transgressions or mitigating factors are considered.[43] While the petitioner has demonstrated competency and learning of the law, his years of misrepresentation and unauthorized practice of the law cannot be ignored. Accordingly, the reinstatement is deferred until April 10, 2008. Additionally, because the petitioner relied upon his Oklahoma license to maintain legal employment and registration in Ohio for twenty seven years, his reinstatement is conditioned on payment of dues and any costs and fees associated with those dues for all of those years. DeBacker is also assessed costs of this proceeding. Payment is due before April 10, 2008.

## REINSTATEMENT GRANTED AND DEFERRED; COSTS AND PAYMENT OF PAST DUES IMPOSED.

WINCHESTER, C.J., EDMONDSON, V.C.J., HARGRAVE, KAUGER, COLBERT, REIF, JJ., concur.

OPALA, J., concurs in part, dissents in part.

WATT, J., dissents.

TAYLOR, J., dissenting:

Due to his twenty-seven (27) years of clear, obvious and blatant neglect and misrepresentation, this Petitioner has failed to prove by clear and convincing evidence, as required by Oklahoma law, that he "is more qualified than one seeking admission for the first time." His reinstatement should be denied.

---

increased to $275.00 annually. Dues are due by February 15, in any calendar year and are assessed an added expense charge of $100.00 if paid late. Rules Creating and Controlling the Oklahoma Bar Association, 5 O.S.2001 art. 8, § 2, Ch. 1, App. 1 provides:

> If a member's dues to the Association remain unpaid after February 15 in any calendar year, there shall be added thereto an expense charge of $100.00. As soon as possible after February 15 in any calendar year, the Executive Director shall send by registered or certified mail, with return receipt requested, written notice to each member of the Association whose dues remain unpaid for that year, stating the amount due, with the expense charge, and demanding payment by a date specified therein, which shall be not less than thirty (30) days after mailing of the notice. The notice shall be addressed to the member at his last address shown on the records of the Association. If payment of dues and expense charge is not received from a member within the time specified in the notice sent him, the Board of Governors shall file application with the Supreme Court recommending suspension of the delinquent's membership and, upon order of the Court, he shall be so suspended, and shall not thereafter practice law in this state until reinstated as provided herein.

Rules Creating and Controlling the Oklahoma Bar Association, 5 O.S.2001 art. 8, § 3, Ch. 1, App. 1 provides:

> If a member's dues to the Association remain unpaid after July 1 in any calendar year, there shall be added thereto an amount equal to the annual dues.

**40.** Rule 6.15, Rules Governing Disciplinary Proceedings, 5 O.S.2001, Ch. 1, App. 1–A providing in pertinent part:

> (a) The Supreme Court may approve the Trial Panel's findings of fact or make its own independent findings, impose discipline, dismiss the proceedings or take such other action as it deems appropriate.....

See, *State ex rel. Oklahoma Bar Ass'n v. Evans*, 1994 OK 45, ¶ 12, 880 P.2d 333; *State ex rel. Oklahoma Bar Ass'n v. Cummings*, 1993 OK 127, ¶ 9, 863 P.2d 1164.

**41.** Rule 11.6, Rules Governing Disciplinary Proceedings, see note 16, supra.

**42.** *State ex rel. Oklahoma Bar Ass'n v. Phillips III*, 2002 OK 86, ¶ 21, 60 P.3d 1030; *State ex rel. Oklahoma Bar Ass'n v. Doris*, 1999 OK 94, ¶ 38, 991 P.2d 1015; *State ex rel. Oklahoma Bar Ass'n v. Rozin*, 1991 OK 132, ¶ 10, 824 P.2d 1127.

**43.** *State ex rel. Oklahoma Bar Ass'n v. Mayes*, 2003 OK 23, ¶ 25, 66 P.3d 398; *State ex rel. Oklahoma Bar Ass'n v. Doris*, see note 42, supra; *State ex rel. Oklahoma Bar Ass'n v. Rozin*, see note 42, supra.