2009 OK 31

**STATE of Oklahoma ex rel. OKLAHOMA BAR ASSOCIATION, Complainant,**

**v.**

**Leah McCaslin KINSEY, Respondent.**

**No. SCBD–5448.**

Supreme Court of Oklahoma.

May 12, 2009.

---

Loraine Dillinder Farabow, Assistant General Counsel, Oklahoma Bar Association, Oklahoma City, OK, for complainant.

Leah McCaslin Kinsey, respondent, pro se.

TAYLOR, V.C.J.

¶1 In this attorney disciplinary proceeding, we must decide whether the record is

sufficient for our *de novo* consideration of the alleged professional misconduct, whether professional misconduct is established by clear and convincing evidence, and whether a twelve-month suspension is appropriate discipline. We conclude that the record is sufficient for our *de novo* inquiry, that there is clear and convincing evidence of professional misconduct, and that the appropriate discipline is suspension for a period of twelve months from the date this opinion becomes final.

## I. Facts and Proceedings

¶ 2 On October 13, 2008, a trial panel of the Professional Responsibility Tribunal of the Oklahoma Bar Association (PRT), conducted an evidentiary hearing on the complaint filed by the Oklahoma Bar Association (Bar Association) against Leah McCaslin Kinsey (Kinsey), OBA No. 16688, alleging violations of the Oklahoma Rules of Professional Conduct (ORPC), 5 O.S.2001, ch. 1, app. 3–A, and the Rules Governing Disciplinary Proceedings (RGDP), 5 O.S.2001, ch. 1, app. 1–A. The PRT's record (record) reveals the following facts and proceedings.

¶ 3 Kinsey was admitted to membership in the Bar Association in September of 1995. Kinsey worked as an associate attorney on salary with the law firm of Richards, Paul, Richards & Siegel (Paul Law Firm) from October of 1995 until her resignation from the firm on January 31, 2008. During the time of the alleged professional misconduct, Kinsey worked directly for attorney John R. Paul.

¶ 4 In June of 2008, John R. Paul and Kinsey prepared and jointly submitted an ethics report on Kinsey to the general counsel of the Bar Association. According to the report, John R. Paul consulted with his firm's counsel and the ethics counsel at the Bar Association and determined that the ethics report should be made to the Bar Association.[1] The substance of the report reads:

> In early 2008, John R. Paul asked Ms. Kinsey about an apparent billing irregularity. The next day it was confirmed by Ms. Kinsey that she had been turning in time and expense reports on cases for clients of the law firm, which time and expenses were false. Ms. Kinsey having admitted to these false submittals resigned her employment from the law firm effective January 31, 2008.

> An audit by the law firm confirmed that on 13 occasions, Ms. Kinsey turned in time entries to be billed to clients, for trips made out of town including preparation time and work done, when that work was not performed. Further, as these time entries involved out of town travel, Ms. Kinsey also turned in expense reimbursement requests, for reimbursement to her of alleged mileage/tolls/travel expenses. Ms. Kinsey has confirmed that these time and expense entries were not in fact incurred.

> The law firm has credited/reimbursed to the clients the time and travel reports turned in by Ms. Kinsey for that time/expense it has determined to be was (sic) false. The total amount of that reimbursement was $15,697.70. Of this amount, $2,072.70 was for travel related expenses that had been paid by the firm to Ms. Kinsey. A request was made by the Paul Law Firm that Ms. Kinsey return those expense funds and she has paid back to the firm the amount of those travel related expenses of $2,072.70.

¶ 5 The Bar Association treated the ethics report on Kinsey as a grievance by John R. Paul, opened a formal investigation, and gave notice thereof to John R. Paul and Kinsey by letters dated June 24, 2008.[2] Kinsey re-

---

1. Rule 8.3 of the ORPC requires a "lawyer who knows that another lawyer has committed a violation of the ORPC that raises a substantial question as to that lawyer's honesty, trustworthiness or fitness as a lawyer in other respects, shall inform the appropriate professional authority."

2. The Comment to Rule 8.3 of the ORPC explains that self-regulation of the legal profession requires members to initiate disciplinary investiga-

tions of those violations that the profession must vigorously endeavor to prevent—violations that raise "a substantial question" as to a lawyer's honesty and fitness to practice law. The Comment further explains that an isolated violation may be part of a pattern of behavior that only an investigation will uncover and that "substantial" refers to the seriousness of the possible offense and not the quantum of evidence of which the lawyer is aware. It is obvious that the ethics

sponded to the grievance by letter dated July 11, 2008.[3]

¶ 6 In her response, Kinsey stated that she did not dispute any facts in the grievance, that she takes full responsibility for her improper actions, and that she wanted to provide background information for a better understanding of her situation. Kinsey explained that she is a perfectionist with high expectations of herself and that she encountered various stress-generating circumstances during the time she made false billing and travel claims to the Paul Law Firm. Those stressful circumstances included her job as an associate attorney, her children (a kindergartner and an infant), her family's need to change residences (move to a larger residence), her husband's unexpected loss of employment, and her need for personal time.

¶ 7 The Bar Association requested documentation of the false time billings and expense claims. By letter dated July 24, 2008, John R. Paul documented thirteen occasions over a period of about fifteen months that Kinsey turned in time entries to be billed to clients for trips made out of town, including preparation time and work done, when the trips were not made and the work was not performed. On August 25, 2008, the Bar Association filed the Rule 6[4] complaint against Kinsey.

¶ 8 The complaint alleged that from August 16, 2006, until November 16, 2007, Kinsey turned in false and fraudulent billing and travel expenses on thirteen occasions that were billed to clients in the total amount of $15,697.70, of which $2,072.70 was paid directly to Kinsey for travel expenses and that Kinsey's conduct violated Rule 1.5[5] of the ORPC (by charging unreasonable fees and expenses); Rule 1.15[6] (by failing to protect client property); Rule 8.4(a), (b), and (c)[7] of the ORPC (by engaging in dishonest acts that reflect adversely on the lawyer); and Rule 1.3[8] of the RGDP (by discrediting the legal profession). On September 12, 2008, Kinsey filed an answer to the complaint specifically admitting that the allegations of false and fraudulent billing and travel expense claims were true, specifically answering that she would schedule a false appointment without informing the Paul Law Firm in order to arrange a day off and then submit false billing and expense reports for these false appointments, specifically admitting that her conduct violated the ORPC and the RGDP, and asking for a private reprimand.

¶ 9 At the hearing before the PRT, the Bar Association and Kinsey jointly offered

---

lawyers consulted and the Bar Association viewed Kinsey's conduct as raising a substantial question as to her fitness to practice law that triggered the reporting obligation under Rule 8.3 and an investigation under Rule 5.2 of the RGDP.

3. Rule 5.2 of the RGDP requires the lawyer, within twenty days after service of a grievance, to respond in writing setting forth "a full and fair disclosure of all the facts and circumstances pertaining to the lawyer's alleged misconduct unless the respondent's refusal to do so is predicated upon expressed constitutional grounds."

4. Rules 6.1 through 6.16 of the RGDP establish the Rule 6 formal disciplinary proceedings before this Court and the Professional Responsibility Tribunal.

5. Rule 1.5 of the ORPC, in pertinent part, reads:
(a) A lawyer shall not make an agreement for, charge or collect an unreasonable fee or an unreasonable amount for expenses....

6. The PRT did not find a violation of Rule 1.15 of the ORPC, and the Bar Association has abandoned that allegation.

7. Rule 8.4(a), (b), and (c) of the ORPC reads:

It is professional misconduct for a lawyer to:
(a) violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another;
(b) commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects;
(c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation;
....

8. Rule 1.3 of the RGDP reads:

The commission by any lawyer of any act contrary to prescribed standards of conduct, whether in the course of his professional capacity, or otherwise, which act would reasonably be found to bring discredit upon the legal profession, shall be grounds for disciplinary action, whether or not the act is a felony or misdemeanor, or a crime at all. Conviction in a criminal proceeding is not a condition precedent to the imposition of discipline.

and the PRT admitted into the record the above-identified materials and filings. The parties also offered and the PRT admitted into the record the parties' stipulations that if John R. Paul appeared as a witness, he would testify that 1) Kinsey is a good attorney, 2) he would not have filed the ethics report except for advice of counsel, 3) he was shocked to hear about the false billing and travel claims which were out of character for Kinsey, 4) he does not believe discipline is warranted, and 5) Kinsey has taken full responsibility for her actions, has cooperated in the internal audit and transfer of caseload, and has made full restitution of the $2,072.70 in false travel claims. The parties also offered and the PRT admitted into the record the parties' stipulations that the following are mitigating factors: 1) Kinsey has accepted full responsibility for her misconduct, 2) Kinsey has expressed remorse for her actions and the harm she has brought to the reputation of the Bar Association, 3) Kinsey has been a licensed attorney in good standing since 1995, 4) this is the first and only grievance against Kinsey and she has never been disciplined for any previous misconduct, 5) Kinsey joined her employer in reporting her misconduct, 6) the firm's clients did not file any grievance against Kinsey, and 7) Kinsey has imposed a "self-suspension" since her resignation from the Paul Law Firm on January 31, 2008. The PRT also admitted into the record a "To whom it may concern" sworn letter from Dianne Baxter on behalf of herself and Nathan Baxter, Executive Pastor, Liberty Church in Broken Arrow, Oklahoma, stating that Kinsey sought their counsel when she realized "she had made a serious judgment in error" and expressing their support for Kinsey.

¶ 10 The Bar Association waived opening statements before the PRT except to recognize that Kinsey has cooperated fully with the Bar Association and the Paul Law Firm, that Kinsey admitted her misconduct was a huge mistake, and that Kinsey accepts full responsibility without excuse. The Bar Association called Kinsey to testify, announcing that the parties wanted the PRT "to understand what was going on in her life at the time she made these very bad errors in judgment, so that we can give the Court a clear picture, so that they can do their job of determining what discipline is appropriate in this case." Kinsey's testimony provided more details on the points made in her written response to the grievance—the pressure and stress experienced by Kinsey and her husband as a young married couple building their respective careers, establishing their home and home life, and parenting young children. Kinsey also testified at length about her feelings of guilt and shame, about the shame she caused for her family and members of her profession, about her self-reporting to the Bar Association and self-suspension from the practice of law. The Bar Association also called its investigator and solicited testimony from her as to the opinions of Nathan and Diane Baxter. Kinsey called no witnesses to testify on her behalf. The Bar Association asked the PRT to recommend a six-month suspension retroactive to the date of Kinsey's "self-suspension" on February 1, 2008.

¶ 11 The PRT concluded that the Bar Association proved by clear and convincing evidence that Kinsey violated ORPC Rules 1.5 and 8.4(a) and (c) and RGDP Rule 1.3 and that discipline is warranted. The PRT found that 1) Kinsey clearly and repeatedly violated ORPC Rule 8.4(a) and (c) and RGDP Rule 1.3; 2) Kinsey's misconduct directly involved dishonesty, deceit and/or misrepresentations; 3) Kinsey's conduct showed poor judgment in the manner in which she choose to take time off; 4) Kinsey admitted her actions, explained the circumstances to her employer and voluntarily resigned from the firm; 5) all clients have been reimbursed for payments made to the firm but not earned and the firm has been reimbursed for travel expenses; 6) there is no evidence of criminal charges filed against Kinsey; and 7) there are no previous discipline, grievances or complaints against Kinsey. The PRT recommended 1) Kinsey's license to practice law be suspended for twelve months beginning the date of the PRT's report, November 12, 2008; 2) Kinsey be required to receive psychological treatment until she has gained maximum benefit to address the problems that led to her professional misconduct; and 3) Kinsey be assessed costs of the disciplinary proceedings

and show proof of payment within fourteen days of the end of the suspension.

## II. Review of the Proceedings before the PRT

¶ 12 This Court has original and exclusive jurisdiction over bar disciplinary matters. RGDP, Rule 1.1. This Court's review of the proceedings before the PRT is *de novo. State ex rel. Okla. Bar Ass'n v. Donnelly*, 1992 OK 164, ¶ 11, 848 P.2d 543, 545. In our *de novo* review, we examine the record and assess the weight and credibility of the evidence. *Id.* This Court is not bound by the parties' admissions or stipulations nor the PRT's findings of facts and misconduct or recommendations of discipline. *Id.*

## III. Sufficiency of the PRT's Record

¶ 13 Initially, we must determine the sufficiency of the record. The record must be sufficient for a thorough *de novo* inquiry into the alleged professional misconduct and the imposition of discipline consistent with that imposed upon other lawyers who have committed similar acts of professional misconduct. *State ex rel. Okla. Bar Ass'n v. Groshon*, 2003 OK 112, ¶ 6, 82 P.3d 99, 103. Here, the facts underlying the charges of professional misconduct are not disputed. In both her response to the grievance and her answer to the complaint, Kinsey admitted that she submitted to the Paul Law Firm false billing and travel expense claims for legal services she did not perform and travel expenses she did not incur. She again admitted she made false billing and expense claims in her testimony before the PRT. The documentary evidence in the PRT's record supports the admitted facts. Upon a thorough review of the PRT's record, we conclude it is a sufficient record for this Court's *de novo* inquiry and the imposition of discipline.

## IV. Kinsey's Professional Misconduct

¶ 14 The facts admitted in the pleadings and the jointly offered documentary evidence from the Paul Law Firm clearly and convincingly establish Kinsey's intentional and fundamentally dishonest pattern of scheduling false appointments in order to take a day off work without informing the Paul Law Firm and submitting false billing and travel expense claims for legal services she did not perform and travel expenses she did not incur on those false appointment dates, which caused clients of the Paul Law Firm to pay for the falsely billed time and expenses. Kinsey admitted and we conclude that Kinsey violated 1) Rule 1.5(a) of the ORPC by causing clients to pay the Paul Law Firm for legal services not performed and travel expenses not incurred and 2) Rule 8.4(a) and (c) of the ORPC and Rule 1.3 of the RGDP by submitting to the Paul Law Firm false billings for legal services and false travel expense claims.

## V. Discipline

¶ 15 Our goals in disciplinary proceedings are to protect the interests of the public and to preserve the integrity of the courts and the legal profession, not to punish the offending lawyers. *State ex rel. Okla. Bar Ass'n v. Benefield*, 2005 OK 75, ¶ 21, 125 P.3d 1191, 1195. We independently determine the appropriate discipline that will achieve these goals and deter this lawyer and other lawyers who might contemplate similar misconduct in the future. *State ex rel. Okla. Bar Ass'n v. Doris*, 1999 OK 94, ¶ 37, 991 P.2d 1015, 1025.

¶ 16 In a disciplinary proceeding, we assess the offending lawyer's continued fitness to practice law considering the involved misconduct and the past professional record of the offending lawyer. *State ex rel. Okla. Bar Ass'n v. Meek*, 1994 OK 118, ¶ 15, 895 P.2d 692, 699–700. We consider the discipline previously imposed by this Court for similar professional misconduct to assure that discipline is administered evenhandedly. *Doris*, 1999 OK 94 at ¶ 38, 991 P.2d at 1025. However, we decide the extent of discipline on a case-by-case basis because each situation generally involves different offending conduct and mitigating circumstances. *Id.*

### a. The Mitigating Factor of Self–Suspension

¶ 17 Kinsey contends that she is "self-suspended" because she has not worked out-

side the home since her resignation from the Paul Law Firm on January 31, 2008. Kinsey argues that lawyers who "self-suspend" either in anticipation of a disciplinary proceeding or because the circumstances merit a break from the practice of law will be unfairly penalized if this Court does not recognize and allow credit for "self-suspension." Kinsey's "self-suspension" argument is grounded in the parties' stipulation that Kinsey "has imposed a 'self-suspension' upon herself since February of 2008 to reflect upon her actions, the demands of her personal life and a professional life."

¶ 18 The Bar Association recommends, in its brief in chief filed December 15, 2008, that Kinsey be suspended from the practice of law for no less than six months and no more than one year and that the suspension be applied retroactively to January 31, 2008. Kinsey responded, in her brief filed December 29, 2008, that a six month suspension retroactive to her "self-suspension" date is the most severe discipline that should be imposed. However, neither party offers any legal authority to support such discipline.

¶ 19 The term "self-suspension," as used here, is a misnomer. Ordinarily suspension occurs when this Court so orders. Under our rules, suspension of a lawyer from the practice of law is a discipline to be imposed by this Court,[9] and a lawyer suspended by this Court is required to give notices to clients and file affidavits.[10] Kinsey may have refrained from practicing law, but she provided no proof that she was suspended from the practice of law or that she complied with Rule 9.1 of the RGDP by giving notice to the Paul Law Firm's clients that she was suspended from the practice of law and filing her required affidavits. The record shows only that Kinsey resigned from the Paul Law Firm on January 31, 2008.

¶ 20 Our independent research reveals that this Court has referred to a lawyer being "self-suspended" in five of our recent opinions. These opinions, however, did not squarely decide that a lawyer may "self-suspend" under our disciplinary rules nor do they recognize a lawyer's "self-suspension" as a substitute for Court-imposed discipline in a Rule 6 proceeding as the Bar Association and Kinsey implicitly ask us to do. Further, these opinions dealt with extenuating circumstances that render them of little value here.

¶ 21 The first opinion is *State ex rel. Okla. Bar Ass'n v. Maddox*, 2006 OK 95, 152 P.3d 204. The one count complaint against Maddox resulted from a guilty plea on a charge of embezzlement by a public official for charging gas on the state credit card and claiming mileage reimbursement in the total amount of $17,404.01. The extenuating circumstance in *Maddox* was the seven years it took for the disciplinary proceeding to come before this Court. The *Maddox* opinion noted it was unclear when Maddox began a self-imposed suspension from the practice of law in anticipation of a hearing before the PRT scheduled for March 22, 2005, but the hearing never happened. 2006 OK 95 at n. 5, 152 P.3d at 207, n. 5. The hearing before the PRT on the Rule 6 complaint against Maddox was had on February 22, 2006. This Court imposed a two-year suspension "beginning on March 22, 2005, the date in which respondent began a **self-imposed** suspension from practicing law," which was the date the PRT hearing should have occurred. 2006 OK 95 at ¶ 20, 152 P.3d at 211.

¶ 22 In three of the cases, the extenuating circumstance was the fact that this Court considered both reinstatement and discipline,

**9.** Rule 1.7 of the RGDP provides that discipline by this Court "shall be disbarment, suspension of a respondent from the practice of law for a definite term or until further order of the Court, public censure or private reprimand; the Court may, in its discretion, suspend or defer imposition of discipline subject to the fulfillment of specified conditions by the respondent."

**10.** Rule 9.1 of the RGDP provides that when the Supreme Court suspends a lawyer associated with a law firm, the suspended lawyer 1) must notify all clients of the firm with which the suspended lawyer had legal business of the suspended lawyers inability to represent them, 2) must file a formal withdrawal as counsel in all cases pending in any tribunal, and 3) must file an affidavit with the Professional Responsibility Commission and the Clerk of the Supreme Court stating that the suspended lawyer has complied with this rule and attach a list of the clients notified and the state and federal courts and administrative agencies before which the lawyer is admitted to practice law.

and the opinions viewed "self-suspension" as reflecting on the lawyer's character for purposes of reinstatement. *State ex rel. Okla. Bar Ass'n v. Albert,* 2007 OK 31, 163 P.3d 527; *State ex rel. Okla. Bar Ass'n DeBacker,* 2008 OK 17, 184 P.3d 506; and *State ex rel. Okla. Bar Ass'n v. Combs,* 2008 OK 96, 202 P.3d 830. *Albert* was a combined proceeding on an application for reinstatement after a Rule 6 interim suspension based on his incapacity to practice law under Rule 10 and on a multiple count Rule 6 complaint. Albert abused alcohol and cocaine and there was an in-court intervention on March 9, 2006, that resulted in Albert entering into a residential treatment center on that day. Shortly thereafter, on March 26, 2006, the Bar Association filed a multiple count disciplinary complaint against Albert and an application for an interim suspension. This Court entered its interim suspension order on April 24, 2006. On Albert's request for reinstatement after interim suspension, we granted reinstatement, and on the Bar Association's multiple-count Rule 6 disciplinary complaint, we held that "the attorney's misconduct warrants discipline of a retrospective suspension from the practice of law from the date he **self-suspended** (March 9, 2006) until the day [May 15, 2007] this opinion is issued." 2007 OK 31, at ¶ 23, 163 P.3d at 537 (bold added). The Rule 6 discipline in *Albert* included the time period he was in rehab beginning March 9, 2006, and the time period his license to practice law was suspended by this Court under Rule 10 beginning April 24, 2006, until reinstatement was granted by this Court's opinion.

¶ 23 *DeBacker* was a reinstatement proceeding. For nearly three decades DeBacker practiced corporate law in another state that recognized his Oklahoma license to practice law. DeBacker's Oklahoma bar license had been suspended for 27 years for nonpayment of his bar dues which he had neglected to pay. The *DeBacker* opinion recognized

that "when notified of his neglectful behavior, he immediately **self-suspended** from the practice of law and reported himself to the Ohio Supreme Court. These factors reflect on his moral character." 2008 OK 17, at ¶ 21, 184 P.3d at 514–515 (bold added). In recognizing DeBacker's voluntary withdrawal from the practice of law for purposes of reinstatement, this Court said: "Considering that the misrepresentations were neglectful, but not intentional, and that he voluntarily withdrew from practicing law on April 10, 2007, and self-reported to the Ohio Supreme Court, his reinstatement will be deferred until April 10, 2008, which results in a one-year suspension from the practice of law." 2008 OK 17, at ¶ 26, 184 P.3d at 516.

¶ 24 *Combs* was a combined proceeding on Combs' application for reinstatement and a single count disciplinary complaint against Combs for failure to follow the mandated procedures for reinstatement after suspension for two years or less. In *Combs,* the ninety-day suspension, imposed by this Court in a Rule 6 disciplinary proceeding, ended December 30, 2007, and Combs returned to practicing law in January of 2008. In February of 2008, a trial judge informed Combs that his name was on the list of suspended attorneys, whereupon Combs "opted to 'self-suspend' himself and did not engage in any further practice of law." 2008 OK 96, at ¶ 4, 202 P.3d at 833–834 (bold added). This Court determined the appropriate discipline for Combs' failure to comply with the reinstatement procedures to be a six-month suspension from the date he filed the application for reinstatement on March 5, 2008.[11] Even though we used the term "self-suspend," Combs' license to practice law remained in a suspended status when he "opted to self-suspend" until the *Combs* opinion issued on October 28, 2008.

¶ 25 The fifth opinion to use the term "self-suspend" is *State ex rel. Okla. Bar Ass'n v.*

11. Rule 11.8 of the RGDP 1) allows a lawyer who has been suspended for less than two years to resume practice upon the expiration of the period of suspension by filing with the Clerk of this Court an affidavit affirming that the suspended lawyer has not engaged in the unauthorized practice of law or otherwise violated the rules of the Bar Association or the terms of the order of suspension and describing all business and professional activities and places of residence during the term of the suspension, 2) makes material deletions from the affidavit grounds for subsequent discipline, and 3) permits the Bar Association to file a subsequent disciplinary complaint within sixty days.

*Whitworth*, 2008 OK 22, 183 P.3d 984. *Whitworth* was a Rule 6 proceeding in which this Court *sua sponte* invoked Rule 10. In discussing the *Albert* opinion, *Whitworth* said Albert "received a retroactive suspension of approximately fourteen months 'from the date he **self-suspended**' for treatment of his addiction until the opinion of this Court was adopted." 2008 OK 22, at ¶ 41, 183 P.3d at 993 (bold added). Although the *Whitworth* opinion appears to say that this Court allowed Albert credit for a fourteen month self-suspension against the suspension ordered by this Court, this is imprecise. The *Whitworth* opinion does not make clear that Albert's license to practice law was suspended by this Court's interim suspension order of April 24, 2006, so that the period of the so-called "self-suspension" could have been no more than the few weeks from March 9, 2006 until April 24, 2006.

¶ 26 Although we have used the term "self-suspension" to communicate the fact that a lawyer stopped practicing law when confronted with possible professional misconduct or incapacity to practice law, we have not accepted "self-suspension" in lieu of discipline to be imposed by this Court. Kinsey's suggested three month but no more than six month maximum suspension retroactive to January 31, 2008, and the Bar Association's suggested six months to twelve months suspension retroactive to January 31, 2008, would have this Court treat the stipulated "self-suspension" as a substitute for discipline. To do so would seriously deflate the Court-imposed discipline for Kinsey's intentional misrepresentations, false billings, and pattern of deceitful conduct that deprived clients of the use of their money and discredited the legal profession. This Court may consider the lawyer's "withdrawal from the practice of law" in its total consideration of mitigating evidence, but calling it "self-suspension" is not an accurate description. Only this Court suspends a lawyer from the practice of law and determines the effective date of the suspension. Calling it "self-suspension" gives the phrase more weight than it is entitled. At most, it is simply a lawyer deciding to withdraw from or to discontinue the practice of law and nothing more. A precedent of deducting self-suspension time

from any Court-imposed suspension has the potential to excuse the professional misconduct rather than to deter professional misconduct. Accordingly, we reject and will not consider the stipulation relating to Kinsey's "self-suspension" in determining the appropriate discipline.

### b. Other Mitigating Factors

¶ 27 The Bar Association and Kinsey urge in mitigation that Kinsey accepts full responsibility and is remorseful for her actions, that she joined in the report of her misconduct and none of her clients filed a grievance, and that she has been a licensed attorney in good standing since 1995 with no other grievance against her. Kinsey argued that in light of the mitigating factors, an appropriate discipline would be in line with the discipline ordered in *In re Thomas J. Schneider*, 553 A.2d 206 (D.C. 1989), and *The People of the State of Colorado v. Doug Kotarek*, 941 P.2d 925 (Colo. 1997). We may consider the construction of similar ethics rules by other jurisdictions, but we consider this Court's previously-imposed discipline in determining the appropriate discipline. Further, the facts and evidence in the cases in the District of Columbia and Colorado are not in line with the facts and evidence in the instant matter.

¶ 28 As a relatively new member of the bar, Schneider altered eight credit card receipts, adding $100.00 to each receipt to recoup his out-of-pocket expenses from his corporate client, Kellogg, in a total amount of $800.00 and the parties agreed that the $800.00 was owed to Schneider. In *Schneider*, the disciplinary process dragged on for six years, and the District of Columbia Court of Appeals acknowledged it contributed to the delay. Schneider received a thirty-day suspension in light of his remorse, cooperation, and subsequent unsullied record, the lengthy process, and the fact a similar discipline was imposed that very day for similar professional misconduct.

¶ 29 Kotarek, also as a relatively new member of the bar, submitted a billing for a deposition that did not take place and a travel expense claim in the amount of $68.20 for a telephonic deposition. It was alleged

that Kotarek charged an unreasonable fee and engaged in dishonesty and conduct that adversely reflected on the lawyer's fitness to practice law. As allowed by the ABA Standards for Imposing Lawyer Sanctions 9.32, Kotarek offered psychiatric medical evidence that his separation from his wife and dissolution of marriage were enormously stressful and debilitating during the relevant time period. Kotarek received a three month suspension in light of the mitigating factors of 1) no prior discipline, 2) personal and emotional problems at the time of misconduct, 3) timely effort to make restitution, 4) full and free disclosure and cooperation in the disciplinary process, 5) mental disability and impairment, 6) loss of job, and 7) existence of remorse. The *Kotarek* court said: "There is good reason to believe that this one instance of dishonesty on the respondent's part was an aberration that is not likely to be repeated." *Kotarek*, 941 P.2d at 926.

¶ 30 Here, Kinsey confessed her wrongdoing when John R. Paul confronted her with a billing irregularity. Kinsey cooperated with the Paul Law Firm and the Bar Association and reimbursed the firm for the $2,072.70 false travel expenses when asked to do so, but she has done nothing about the nearly fourteen thousand dollars of attorney fees that she falsely billed and the Paul Law Firm paid back to the clients. Kinsey has repeatedly stated that she accepts responsibility for her deceitful conduct and that she is remorseful. However, Kinsey has described her conduct as a "judgment in error" and has asserted that the stresses in her life clouded her judgment when she decided to submit false client billings and false travel claims so she could have some time for herself and her children without asking the Paul Law Firm for time off work. Kinsey has also pressed for consideration of the fact that she has already endured the punishment of her severe mental anguish and guilt.

 ¶ 31 We are not convinced that Kinsey comprehends the seriousness of her intentional and fundamentally dishonest con-

duct that caused harm to her clients and the Paul Law Firm and brought discredit to her and the legal profession. In the absence of any credible evidence corroborating her statements about responsibility, remorse, and anguish, we are not convinced that Kinsey has accepted full responsibility for the intentional dishonest conduct in which she engaged to achieve personal benefit, nor are we convinced that her remorse is genuine. We will not accept Kinsey's explanation of her mental and emotional conditions as an excuse for her scheme of dishonesty and professional misconduct.[12] We will consider as mitigating factors only the fact of her good standing as a lawyer since 1995 and the fact that this is the first and only grievance against her.

### c. The PRT's Recommended Psychological Treatment

 ¶ 32 The PRT recommended that Kinsey's license to practice law be suspended for twelve months and that Kinsey be required to receive psychological treatment until she has gained maximum benefit to address the problems that led to her professional misconduct. The Bar Association offered to proceed under Rule 10 of the RGDP, but Kinsey declined the offer. Kinsey argued that the PRT was arbitrary in its recommendation of psychological treatment and that the PRT erroneously relied on *In the Matter of Hyde*, 1997–NMSC–064, 124 N.M. 363, 950 P.2d 806.

 ¶ 33 The facts in *Hyde* were that Hyde worked at a law firm and for two years in two civil cases he submitted false billing statements for legal work that he did not perform, neglected the interests of his clients, and misrepresented the work he performed. The *Hyde* court imposed an indefinite suspension with a minimum of one year and conditioned reinstatement on psychological treatment and clearance from the therapist that he had received the maximum benefit from his treatment. 950 P.2d at 810. We agree with Kinsey that psychological treat-

---

12. A lawyer's mental and emotional condition, such as emotional stresses and mental anguish, may be shown to demonstrate the lawyer's capacity for rehabilitation and fitness to practice law, but it may not be used as a complete barrier to the lawyer's accountability for professional misconduct. *Okla. Bar Association v. Colston*, 1989 OK 74, ¶ 22, 777 P.2d 920, 925–926. *Colston* rejected proof of mental and emotional conditions as a vehicle to defer discipline. *Id.*

ment similar to that ordered in *Hyde* is not supported by the evidence in the instant matter and reject the PRT's recommendation of psychological treatment. We do, however, agree with the *Hyde* court that the stresses of life are neither an excuse nor a mitigating factor for a lawyer's deceit:

> It was also suggested in mitigation that respondent's misconduct was an inappropriate and unfortunate response to pressures at home and at work that he could not handle. Indeed, it was undisputed in the proceedings below that respondent had been well-respected by his peers both within the firm and the larger legal community. These facts, however, do little more than make this occasion all the sadder. Respondent's deceit was not a one time lapse in judgment; rather, it was a pattern of dishonesty that continued for almost two years. The potential for harm to his clients was real and significant. Clients must be able to rely on their lawyers to protect their interests in legal proceedings. They must be able to believe what their lawyers tell them about their cases. By deceiving his clients and abandoning their interests in response to the undeniable pressures of being a young associate and a father, respondent harmed his clients, his firm, and ultimately, himself and his family. The lesson from this case should be clear: the pressures of the practice of law provide neither an excuse nor a mitigating factor for deceit. Dishonest conduct by lawyers will not be tolerated.

950 P.2d at 809 (citation omitted).

#### d. The Appropriate Discipline

¶ 34 We have not previously imposed discipline on a lawyer for false billings and expense claims. We have, however, imposed discipline on lawyers who were public officials and submitted false travel and/or expense claims. In *State ex rel. Okla. Bar Ass'n v. Lile*, 2008 OK 82, 194 P.3d 1275, we disbarred a former judge of the Court of Criminal Appeals for professional misconduct that included fraudulent travel and expense claims and abuse of his office to gain favors in criminal matters for his girlfriend and for his son. In *State ex rel. Okla. Bar Ass'n v. Maddox*, 2006 OK 95, 152 P.3d 204, we im-

posed a two-year suspension on the former district attorney after he entered a guilty plea on a charge of embezzlement by a public official for charging gas on the state credit card and claiming mileage reimbursement in the total amount of $17,404.01. Kinsey's false billings and claims totaled $15,697.70 which is close to the amount involved in *Maddox*. But *Maddox* involved a criminal embezzlement charge and a breach of the public trust which may have enhanced the discipline and serious unwarranted delay in the disciplinary proceedings that did mitigate the discipline.

¶ 35 Also, we have disciplined lawyers who were not public officials for dishonesty, fraud, deceit, or misrepresentation. In *State ex rel. Okla. Bar Ass'n v. Meek*, 1994 OK 118, 895 P.2d 692, the lawyer commingled and converted one client's funds in the amount of $1,800.00 and made misrepresentations about the funds to the client and the Bar Association. In *Meek*, the commingling and the misrepresenting warranted a one-year suspension. In *State ex rel. Okla. Bar Ass'n v. Leigh*, 1996 OK 37, 914 P.2d 661, the lawyer held himself out as a CPA after he failed the CPA test which this Court concluded violated Rule 8.4(c) of the ORPC as well as other rules. Imposing a suspension of 180 days, this Court said:

> A lawyer's license is a certificate of professional fitness to serve the clients as a legal practitioner. Public confidence in the practitioner is essential to the proper functioning of the profession. A lawyer's misconduct adversely reflects on the entire Bar because it exhibits a lack of commitment to the client's cause, to the court's expectations, and to the ideals of the profession. The respondent has breached his obligation to uphold, with strict fidelity, the high standards imposed upon the Bar. His false and misleading communications about his professional qualifications call for the imposition of discipline. The PRT panel recommended that respondent be suspended from the practice of law for a 120–day interval. We deem the appropriate discipline to be a 180–day suspension.

1996 OK 37 at ¶ 14, 914 P.2d at 667 (footnotes omitted).

¶ 36 In *State ex rel. Okla. Bar Ass'n v. Pacenza*, 2006 OK 23, 136 P.3d 616, the Bar Association filed a two count complaint of professional misconduct involving a contract for deed between the lawyer as the seller and Eric and Tina Richards as the buyers. The lawyer did not disclose the existence of a $300,000.00 tax lien on the property and the Richardses made substantial improvements to the property. The complaint alleged that Pacenza engaged in conduct involving dishonesty, fraud, deceit or misrepresentation resulting in significant economic harm to the Richardses. The PRT recommended a six-month suspension but this Court imposed a suspension for two years and a day, stating:

> Honesty and integrity are the cornerstones of the legal profession. Nothing reflects more negatively upon the profession than deceit. There can be little doubt that the attorney brought discredit upon the legal profession....

> Pacenza's conduct, his two previous encounters with the disciplinary system and the lack of remorse or acceptance of responsibility along with a complete lack of concern for the Richards, convinces this Court that vindication of the legitimate interests served by Oklahoma's bar disciplinary regime requires the imposition of a suspension of two years and one day together with payment of costs.

> . . .

> [H]is failure to disclose the title problems to the Richards when the contract for deed was executed, his lack of honesty with multiple parties concerning his efforts to clear title and his continued refusal to accept responsibility for his action permeate the records of the disciplinary proceeding, the Richards lawsuit and the bankruptcy matter. We take patterns of misrepresentation seriously.

*Id.* 2006 OK 23 at ¶¶ 33–35, 136 P.3d at 629–630 (footnotes omitted).

¶ 37 There are a myriad of disciplinary cases involving patterns of misrepresentation and deceit, but none directly on point. In many cases we have suspended the lawyer for misrepresentation, often for two years and a day where there is a pattern of deceit.[13] Here, the PRT recommended a twelve-month suspension to begin in November of 2008 and the Bar Association suggested a six-month to twelve-month suspension to begin February 1, 2008. Under the circumstances in this case, we think a twelve-month suspension with no retroactive application is sufficient to deter Kinsey and other lawyers from similar misconduct in the future and to accomplish the goals of discipline. Accordingly, Kinsey's license to practice law shall be suspended for a period of twelve months from the date this opinion becomes final.

## VI. Costs

¶ 38 The PRT recommended that Kinsey be assessed costs of the disciplinary proceedings and show proof of payment within fourteen days of the end of the suspension. The Bar Association filed an application to assess the costs of the investigative and disciplinary proceedings in the amount of $948.24. The application is supported by documents attached thereto. Kinsey has acknowledged her responsibility for these costs, and she has not filed an objection to the Bar Association's application to assess costs.

¶ 39 The Bar Association's application is granted. Kinsey is ordered to pay costs in the amount of $948.24 within ninety (90) days after this opinion becomes final in accordance with Rule 6.16 of the RGDP.

## VII. Conclusion

¶ 40 We conclude the record is sufficient for our *de novo* consideration. We find clear and convincing evidence that Kinsey intentionally and falsely misrepresented the legal services she performed and that Kinsey's dishonesty caused clients to pay fees and costs of legal services that were not performed. We conclude Kinsey's false billing and travel statements violated Rules 1.5(a) and 8.4(a) and (c) of the ORPC and Rule 1.3 of the RGDP. We determine the appropriate discipline for Kinsey's professional misconduct is suspension of Kinsey's license to practice law for a period of twelve months from the date this opinion becomes final. We assess $948.24 for the costs of this proceed-

---

13. *See Pacenza*, 2006 OK 23, n. 60, 136 P.3d at 628–629, n. 60, for a listing of many of these disciplinary cases.

ing against Kinsey to be paid within ninety days from the date this opinion becomes final.

**RESPONDENT IS SUSPENDED FROM THE PRACTICE OF LAW FOR TWELVE MONTHS FROM THE DATE THIS OPINION BECOMES FINAL; RESPONDENT IS ORDERED TO PAY COSTS WITHIN NINETY DAYS FROM THE DATE THIS OPINION BECOMES FINAL.**

EDMONDSON, C.J., TAYLOR, V.C.J., and HARGRAVE, OPALA, KAUGER (by separate writing), WINCHESTER, COLBERT, and REIF, JJ., concur.

WATT, J., concurs in part and dissents in part: I would impose a longer period of suspension upon this respondent.

KAUGER, J., concurring.

¶ 1 Regardless of what we call it, "self-withdrawal" from the practice of law has been, and remains today, a mitigating factor in the consideration of discipline.