2011 OK 8

**STATE of Oklahoma ex rel. OKLAHOMA BAR ASSOCIATION, Complainant,**

v.

**Tracy SMITH, a.k.a. Tracy Smith Zahl, Respondent.**

SCBD No. 5615.

Supreme Court of Oklahoma.

Jan. 31, 2011.

Loraine Dillinder Farabow, Assistant General Counsel, Oklahoma Bar Association, for the Complainant.

Gary Wood, Oklahoma City, OK, for the Respondent.

**EDMONDSON, J.**

¶1 The complainant, Oklahoma Bar Association (Bar), instituted a disciplinary action against the respondent, Tracy Smith, a.k.a. Tracy Smith Zahl, pursuant to Rule 6, Rules Governing Disciplinary Proceedings (RGDP), 5 O.S. 2001, Ch. 1., App. 1–A, alleging two counts of professional misconduct in violation of the Oklahoma Rules of Professional Conduct (ORPC) 5, O.S. Supp.2008, Ch. 1, App. 3–A.

**COUNT I**

¶2 The complainant alleged that on March 17, 2008, Dr. Mike Seikel received a call from Belle Isle Pharmacy concerning a suspicious prescription bearing his assigned DEA number. Dr. Seikel telephoned the Oklahoma City Police Department (OCPD) and reported that a prescription pad had been stolen from his office. On June 10, 2008, respondent telephoned a CVS Pharmacy to fill a prescription for the drug Tussionex, a controlled substance containing the narcotic hydrocodone. Respondent advised the pharmacy employee that Dr. Seikel had prescribed the medication and that she would pick it up later that day. CVS contacted Dr. Seikel's office to verify the prescription and was advised that the prescription was forged on the prescription sheet stolen from his office.

¶3 CVS contacted the OCPD and alerted them to the situation. OCPD officers were dispatched to CVS to wait for anyone attempting to pick up the forged prescription. The respondent arrived at the CVS drive-through window and requested the alleged prescription from Dr. Seikel. Respondent was intercepted by OCPD officers who placed her under arrest for the felony crime of Attempting to Obtain a Controlled Dangerous Substance by Forgery or Fraud in violation of 63 O.S. § 2–407. CVS informed OCPD that it had filled six (6) alleged prescriptions for the respondent between April 22 and May 28, 2008. Three of the alleged prescriptions were for hydrocodone and three were for Tussionex.

**COUNT II**

¶4 On June 11, 2008, the respondent entered Valley Hope Association drug treatment program located in Cushing, Oklahoma, as an inpatient. On June 19, 2008, complainant received a letter from the respondent in which she advised the Bar of her arrest and her treatment at Valley Hope. Respondent extended her apologies for her actions. The respondent was discharged from Valley Hope on July 11, 2008, with a recommendation for a continuing care treatment plan which called for the respondent to enroll and participate in a relapse prevention program offered by Valley Hope's Oklahoma City branch. Respondent enrolled in the relapse prevention program the same day she was discharged. On December 2, 2008, the respondent admitted to her counselor that during a visit with her family in Texas she took several diet pills from a family member and used them to "get high." The respondent also admitted that on February 25, 2009, she smoked marijuana during a visit to Texas. The respondent admitted that she used marijuana on another trip in June of 2009.

¶5 The Oklahoma County District Attorney declined to file criminal charges against the respondent. Following the district attorney's decision not to charge her, the complainant scheduled a meeting with the respondent on October 2, 2009, to discuss its disciplinary investigation and the status of her criminal charges. At that meeting, the respondent advised that she had been sober and had abstained from using controlled substances since her last relapse. She expressed remorse for her actions and agreed to submit to random drug tests to prove her sobriety and her commitment to remaining sober. Respondent submitted to a hair follicle test on October 2, 2009; the test results were negative for any controlled substances.

¶ 6 The respondent has continued counseling with her therapist and attending AA meetings. She continues to submit to random drug tests and has not tested positive for any controlled substances. Respondent's supervising attorney at her law firm continues to monitor her and has advised the complainant that no clients were ever harmed as a result of her drug use and that her work continues to be competent and up to ethical standards. The Bar has received no grievances whatsoever regarding the respondent's work, ethics or abilities from any client, judge or opposing counsel.

¶ 7 The complainant alleges that the respondent's conduct violates the mandatory provisions of Rule 8.4(a), (b) and (c) ORPC and Rule 1.3 RGDP and warrants the imposition of professional discipline. Rule 8.4 ORPC provides that it is professional misconduct for a lawyer to:

> (a) violate or attempt to violate the Rules of Professional Conduct . . . ;
>
> (b) commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects;
>
> (c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation;
>
> * * *

Rule 1.3 RGDP provides that the commission by any lawyer of any act contrary to prescribed standards of conduct, whether in the course of his professional capacity, or otherwise, which act would reasonably be found to bring discredit upon the legal profession, shall be grounds for disciplinary action, whether or not the act is a felony or misdemeanor, or a crime at all. Conviction in a criminal proceeding is not a condition precedent to the imposition of discipline.

¶ 8 The respondent admitted the material allegations of the complaint in her response. The matter proceeded before a trial panel of the Professional Responsibility Tribunal (PRT) as an uncontested proceeding. At the hearing on April 20, 2010, testimony was taken from the respondent, from the Bar's investigator, from respondent's drug abuse counselor and from the managing partner of the law firm where the respondent is employed. Fifty-six (56) exhibits were admitted into evidence, including affidavits from a supervising attorney and an office manager at respondent's law firm. Reports from respondent's counselor, from Valley Hope, of her AA and NA attendance and from her drug testing were submitted. The PRT recommends the professional discipline of public reprimand and a deferred suspension of one year. Additionally, the PRT recommends that ten probationary conditions recommended by the complainant and the respondent be imposed for the one year of deferred suspension. The Bar agrees with the recommendation of discipline made by the PRT. The respondent agrees with the PRT's recommendation of a one-year deferred suspension and compliance with the probationary conditions, but suggests that mitigating factors warrant a private rather than public reprimand.

## STANDARD OF REVIEW

¶ 9 Our review of the proceedings before the PRT is de novo. *State ex rel. Oklahoma Bar Ass'n v. Kinsey*, 2009 OK 31, ¶ 12, 212 P.3d 1186. We examine the record and assess the weight and credibility of the evidence. *Id.* We are bound neither by the parties' admissions or stipulations nor by the PRT's findings of fact or recommendation of discipline. *Id.* We find that the record before us is sufficient for our de novo review.

¶ 10 At the time of the hearing, respondent had been sober for approximately ten months. The respondent has admitted the conduct described in the complaint and has admitted violation of the ORPC and RGDP. The respondent adopted the findings of fact of the PRT: The respondent was licensed to practice law in Texas in 2002. Her substance abuse began while practicing in Texas following use of prescription pain medications for various illnesses. This resulted in her intermittent recreational use of those substances. In 2006, the respondent became licenced to practice law in Oklahoma, moved to Oklahoma and got married. Her drug use escalated from intermittent to regular, until it reached the point that she became a self-described "binge user." She obtained pain medications for recreational use through an

internet service until it was shut-down, then through "doctor shopping" and from friends who gave medications to her. She continued the behavior and usage without treatment until January 2008, after her husband's discovery of her problem, when she began to research counseling services and treatment. The respondent began individual counseling with Beverly Rapp, a psychotherapist/licensed drug and alcohol counselor, in February 2008. Her counselor directed respondent to attend AA and gave her names of women to contact for support. In April or May of that year, the respondent disclosed to her counselor that she could not stop her drug abuse on her own. Respondent and her counselor devised a treatment plan that entailed inpatient treatment at Valley Hope in Cushing, Oklahoma. The respondent scheduled inpatient treatment to begin on June 14, 2008 at Valley Hope. She advised representatives of her law firm that she was entering a month-long inpatient treatment program for her addiction and the law firm approved her leave for that purpose. The inpatient treatment was scheduled and her law firm was informed before the respondent was arrested.

¶ 11 Following the arrangements for inpatient treatment and leave from her law firm, the respondent decided to have a last "party" on June 10, 2008. Her thoughts were that she was going to stop using drugs as of June 14 and she wanted one last "good time." She called in a refill of the forged prescription, was arrested by OCPD while at the pharmacy and was booked into jail.

¶ 12 The respondent entered Valley Hope the following day. She had last used drugs some four to ten days before. While at Valley Hope the respondent followed the 12–step program. She reported her arrest and her entry into rehabilitation by letter to the Bar and expressed remorse for her conduct. Upon completion of the inpatient program, respondent enrolled in an outpatient relapse program, continued individual counseling with her previous counselor, attended AA and NA meetings and began working with a female sponsor who is an attorney in Dallas. Respondent's efforts to maintain her sobriety are ongoing and she participates in random drug tests and shares the results with the Bar. The respondent had three relapses after her inpatient treatment, as set out in Count II. Her last relapse was in June 2009 when her husband left her and she smoked marijuana. The respondent reported her relapses to her family, her counselor and the Bar. The counselor testified that relapses are a part of the recovery process. The respondent and her counselor treated the relapses as serious, but still believed that her recovery program was working. The respondent has been drug-free since June 2009 and random testing supports this.

¶ 13 The Bar proceeded under Rule 6 rather than Rule 10 of the Rules Governing Disciplinary Procedure because there was never any suggestion or indication that the respondent was incapable of practicing law and there was no evidence that the respondent was or is mentally or physically incapacitated or unable to practice law. Because no such evidence was offered, the proceeding was properly commenced pursuant to Rule 6 RGDP.

¶ 14 The respondent has admitted the conduct and has admitted violation of Rule 8.4(a), (b), (c) ORPC and Rule 1.3 RGDP. Clear and convincing evidence supports the findings of fact by the PRT and we adopt their findings. It remains for us to determine the appropriate discipline to be imposed on the respondent. In determining the appropriate discipline, we look to similar cases.

¶ 15 *State ex rel. Oklahoma Bar Ass'n v. Willis,* 1993 OK 138, 863 P.2d 1211, was instituted under Rule 7 RGDP, a summary disciplinary procedure based upon criminal conviction of, or certain plea agreements to, a crime which demonstrates a lawyer's unfitness to practice law. Willis was convicted after a guilty plea to a felony of obtaining a Schedule II controlled substance by misrepresentation and was sentenced to probation for a term of three years, with special conditions attached. Willis was summarily suspended from the practice of law under the provisions of Rule 7 and we referred the matter to the PRT for a hearing to determine final discipline. Willis argued that he should not be given any term of suspension

because he had been addicted to painkillers and had been successfully rehabilitated and because no clients were harmed. Willis referred to his actions as mere "subterfuge," rather than misrepresentation or fraud, in an attempt to avoid suspension. We said that Willis was not convicted or suspended because of addiction to drugs, but because of his conviction of a felony that involved deception and dishonesty. His conviction of the felony of obtaining a controlled substance by misrepresentation stood as conclusive evidence of the commission of that crime under Rule 7. Although evidence was presented of other instances in which Willis obtained drugs by unauthorized prescriptions, in addition to the two incidents for which he was convicted, we based our order of discipline solely upon his conviction and did not consider other acts for which he was not charged. We suspended Willis from the practice of law for a period of fifteen (15) months commencing from the date of the order of interim suspension.

¶ 16 In *State ex rel. Oklahoma Bar Ass'n v. Garrett*, 2005 OK 91, 127 P.3d 600, Garrett was arrested for felonious sexual battery while intoxicated and pled guilty to misdemeanor battery. Garret had allegations of prior sexual batteries and had been charged with previous alcohol-related traffic violations, but had never before been disciplined for professional misconduct. Garrett's problems stemmed from his abuse of alcohol and did not involve client relationships. We found that the respondent's actions violated Rule 8.4(a), (b) ORPC and Rule 1.3 RGDP because he committed a criminal act that reflected adversely on the his honesty, trustworthiness or fitness as a lawyer and brought discredit upon the legal profession. We took into account Garrett's actions after his arrest which showed serious commitment to maintaining sobriety. Garrett fully cooperated with the district court and the Bar and did not contest the allegations of the complaint. Garrett did not stop drinking, however, until criminal charges were filed against him and his law license was placed in jeopardy. We determined that public cen-

sure and probation for one year was the appropriate discipline. We said that the stipulated conditions to be met during probation were appropriate for encouraging a permanent change of lifestyle.

¶ 17 In *State ex rel. Oklahoma Bar Ass'n v. McBride*, 2007 OK 91, 175 P.3d 379, the attorney was convicted of driving under the influence of alcohol after numerous other vehicle and alcohol-related violations. McBride's conduct did not involve the representation of clients and he actively sought treatment for his alcoholism after his arrest. Discipline was sought to be imposed pursuant to Rule 6 was for violations of Rule 8.4(b) and (d) ORPC and Rule 1.3 RGDP. McBride stipulated to alcohol-related offenses covering a time period of more than ten years. We imposed discipline of public censure coupled with a deferred suspension of two years and one-day, with probationary conditions. We noted that McBride's problems stemmed from his abuse of alcohol and that if he continued to abstain, he would not pose a threat.

¶ 18 Leniency has been given to lawyers who confront their addiction and take steps to make amends and obtain treatment before disciplinary action is instituted. In *State ex rel. Oklahoma Bar Ass'n v. Donnelly*, 1992 OK 164, 848 P.2d 543, Donnelly was charged with lack of diligence and promptness in representing a client, not keeping the client informed, deceiving the client and for not revealing his alcoholism in a previous disciplinary proceeding. We considered Donnelly's alcoholism as a mitigating factor in fashioning the suitable Rule 6 discipline because Donnelly, on his own, informed his client of his misconduct,[1] recognized that he had a problem with alcohol and sought treatment for his addiction, all before disciplinary proceedings were brought against him. We distinguished Donnelly's conduct from that of a lawyer who seeks treatment after disciplinary proceedings have been instituted. We observed that mitigation under the circumstances affords an incentive for other lawyers to seek help before misconduct arises or

---

1. Donnelly told his client that he had taken a default judgment in their case when, in fact, he had never filed the lawsuit. The client was able to hire another lawyer and get the suit filed and resolved. 848 P.2d at 544.

progresses to a more serious stage. Donnelly was publicly reprimanded.

¶ 19 While discipline should be administered fairly and evenhandedly, the terms will vary since each situation must be decided case by case, each involving different offenses and different mitigating circumstances. *State ex rel. Oklahoma Bar Ass'n v. Burns*, 2006 OK 75, ¶ 26, 145 P.3d 1088. Because of these differences, the range of discipline imposed in substance-related disciplinary matters has been quite wide. In the cases discussed above, public censure plus probation was deemed appropriate discipline for misconduct where the attorney's ability to practice law was not impaired, no clients were harmed, no allegations of fraud or misrepresentation were made and the lawyer maintained a strong commitment to sobriety.

¶ 20 We must fashion discipline that will sufficiently deter the respondent and other members of the bar from similar misconduct. The respondent in the case at bar committed the criminal offense of attempting to obtain a controlled dangerous substance by forgery or fraud. This is serious misconduct and it is not to be taken lightly. The respondent also had obtained drugs by forged prescription in the weeks prior to her arrest. The respondent has not been charged with or convicted of any crime nor has she any previous disciplinary history. Counsel for the Bar admitted that the Bar might never have learned of respondent's conduct if she had not reported herself. Thus, the respondent put herself in the position of being investigated by the Bar and subjecting herself to professional discipline when she might have avoided it by being less forthright.

¶ 21 Counsel for the Bar told the PRT that the respondent cooperated fully and frankly with the Bar and had done everything she could do to address her problem and facilitate her recovery. No clients were involved or harmed. We agree with the Bar that the evidence overwhelmingly demonstrates that respondent's problems were a result of her addiction to highly addictive pain medication. The respondent's conduct in confronting her addiction and seeking treatment, her self-reporting to the Bar and her forthrightness and cooperation throughout the disciplinary process serves as an example to other lawyers who are addicted. As in *Donnelly*, this Court will, where appropriate, look favorably on those who are self-motivated to confront their addictions, exhibit a sincere commitment to rehabilitation, openly admit their conduct and seek help before disciplinary charges are filed.

¶ 22 Respondent has agreed to a one-year deferred suspension and compliance with ten probationary conditions.[2] Based on the particular facts and circumstances of this case, we determine that public censure coupled with a deferred suspension of one year, subject to the agreed probationary conditions, is appropriate to serve as a deterrent and to encourage a permanent change of lifestyle.

2. The agreed conditions are:

1. Respondent shall continue psychotherapy and/or counseling with her current counselor, or one approved by the Office of the General Counsel, for one year from the date of the Court's opinion;
2. Respondent shall refrain from taking any illegal substances or prescription medications unless validly prescribed by a licensed medical physician who has been notified verbally and in writing of respondent's narcotics addiction. A copy of the written notification will be provided to the General Counsel within seventy-two hours;
3. Respondent shall refrain from abusing any intoxicant or substance;
4. Respondent shall regularly attend and participate in AA and NA, including continued application of the 12 Step Program, at least twice a week;
5. Respondent shall report her attendance at AA/NA meetings to the General Counsel, and provide documentation thereof, by the 15th of every month;
6. Respondent shall not violate the Oklahoma Rules of Professional Conduct or the Rules Governing Disciplinary Proceedings;
7. Respondent shall not violate the law in any state and will immediately report any such violation in writing to the General Counsel within 48 hours;
8. Respondent shall continue to be monitored and supervised by the partners in her law firm, who shall be required to report any violation of any term or condition of this agreement;
9. Respondent shall continue to submit to random drug testing (either urinalysis or hair follicle testing), at her own cost, at the request of the General Counsel and results will be sent directly from the testing facility to the OBA;
10. Respondent shall abide by and comply with any additional probationary terms and conditions ordered by the Oklahoma Supreme Court.

Accordingly, the respondent stands publicly reprimanded and is placed under deferred suspension with probationary conditions for one year from the date of this opinion.

¶ 23 At the hearing before the PRT, the parties requested that the exhibits be filed under seal, but no order was entered sealing the exhibits. No motion has been filed with this Court asking that the exhibits be sealed.

¶ 24 On June 9, 2010, the complainant filed its application to assess costs against the respondent in the sum of $1,121.15, pursuant to Rule 6.16, RGDP. The respondent has filed no objection to the assessment of costs. The respondent is directed to pay the costs of the proceeding within ninety (90) days of the date this opinion becomes final.

¶ 25 COLBERT, V.C.J., KAUGER, WATT, WINCHESTER, EDMONDSON, REIF, COMBS, JJ., Concur.

¶ 26 TAYLOR, C.J., Dissents. "The Suspension should not be deferred."